G. M. LOGAN, trustee, plaintiff in error *vs.* W. P. GOODALL, executor, and his tenants, defendants in error.

(LOCHRANE, C. J., said he had been consulted by and had advised Logan, but was not employed.  By request, he presided.)

Where on the trial of an action of ejectment for a lot in the city of Macon, in favor of George M. Logan, Trustee for Mrs. A. E. McLaughlin, it appeared that in 1850 McLaughlin and his wife, on their marriage in Richmond county, entered into a marriage contract, in which McLaughlin covenanted with John T. Lamar, who was a party to and signed the deed, that his wife should have a separate estate in certain real and personal estate belonging to her before the marriage ; that subsequently, in 1836, the city lot, of which the property in dispute is a part, was leased, with the proceeds of the separate estate for nine hundred and ninety-nine years from the city of Macon ; that a deed of lease was taken to John T. Lamar, Trustee for Mrs. E. McLaughlin ; that in 1842 Lamar died ; that in 1842, McLaughlin conveyed the lot to White & McLaughlin, partners, McLaughlin being one of the firm in consideration of one dollar ; that in 1849 the whole lot was sold as the property of White, at sheriff's sale, under an execution against White only ; that on the day of the sale the purchaser reconveyed the lot to White ; that McLaughlin saw the advertisement of the sale, and was in the city on the day of the sale, but was not present at the sale ; that the defendants, through several intermediate purchasers, hold a portion of the lot, under the title from White as the owner of the whole ; that they had no notice of the marriage settlement, or of the facts that the lease was paid for with the separate funds of the wife, and have in good faith made valuable improvements upon it.

*Held,* 1. That, under the marriage settlement, Lamar became, by operation of law, trustee for the protection of the separate estate, and if the

Logan *vs.* Goodall.

lease was paid for by the separate funds of the wife, Lamar was in equity a trustee for her sole use of the lot conveyed in the lease; that at his death the trusteeship became vacant, and the Judge of the Superior Court might legally appoint a successor who could maintain ejectment on the title.

2. That, although, by the law as it stood before the adoption of the Code, the deed "to Lamar, trustee for Mrs. McLaughlin," did not contain any words sufficient to exclude the marital rights of the husband, yet, as between the wife and her husband, or purchasers from him with notice of the wife's rights, or between her and wrong doers, marital rights did not in fact attach, and her trustee may, as against him, or purchasers from him with notice, or mere wrong-doers, maintain ejectment for the lot.

3. That inasmuch as the deed to Lamar was to "Lamar, trustee for Wm. McLaughlin," it did not upon its face, as the law then was, exclude the rights of the husband, and persons dealing with him had a right to treat him as the true owner, and any purchaser from him or under him, without notice of the equitable rights of the wife, if the purchase be *bona fide*, will be protected against her rights.

4. Under the deed from McLaughlin to White & McLaughlin, only an undivided half of the lot passed to White and the purchasers at the sheriff's sale, and those holding under that sale, hold only the interest of White; nor does the fact that McLaughlin saw the advertisement and was in the city at the time, but was not present at the sale, estop the wife or her trustee from setting up against said purchasers, her right to the other undivided half of the lot.

5. One tenant in common may bring ejectment against his co-tenant, if the possession of the co-tenant be adverse; if a recovery is had the plaintiff will be put in possession as tenant in common, leaving to the parties the right, by writ of partition or by bill in equity to settle any equities there may be between them as tenants in common.

See concurrence of WARNER, J.

Trusts. Marriage Settlements. Ejectment. Before Judge COLE. Bibb Superior Court, May Term, 1870.

This was ejectment for part of lot number fifteen, in the western range of two acre lots in Macon, by Doe, upon a demise from John T. Lamar, as trustee of Mrs. E. W. McLaughlin, for forty years from the 1st of January, 1842, against Roe, casual ejector, and William P. Goodall, as executor of Robert P. McEvoy, as tenant in possession. The defenses were, not guilty, and prescription of seven years.

Logan *vs.* Goodall.

.  Plaintiff's counsel read in evidence a marriage settlement made in Richmond county, Georgia, on the 28th of December, 1830, between Alexander R. McLaughlin, of Bibb county, Elizabeth W. Bugg, of Richmond county, and John T. Lamar, of Bibb county, signed by the three, recorded in Richmond county, on March the 22d, 1831, and in Bibb county, on the 2d of Febuary, 1870, the body of which was as follows:

Whereas, Samuel Bugg, late of the county of Richmond, and State aforesaid, the father of the above named Elizabeth, was in his life-time, and at the time of his death, seized and possessed of a good estate, real and personal, to a distributive share of which the said Elizabeth was, and is, entitled, and upon a division of which estate, after the payment of debts, there fell to the share of said Elizabeth the following negro slaves, to-wit: Billy, Joe and Sallie, and an interest in the swamp plantation called Egypt, below Augusta, being one-fourth; and whereas, a marriage is intended shortly to be had and solemnized between the said Alexander R. and said Elizabeth W, it is agreed by and between the said Alexander and Elizabeth, that if said marriage shall take effect, then, notwithstanding the said marriage, said Alexander R., his administrators, executors or assigns, shall not nor will intermeddle with or have any right, title or interest, either in law or equity in or to any part of the property before described as belonging to the said Elizabeth, or in or to any part or portion of property to which the said Elizabeth is now entitled, or interested in either at law or in equity, whether in possession or expectancy as one of the distributors of her late father, Samuel Bugg, or in any other manner whatever.   Now this indenture, witnesseth that, for the making the said agreement good, and effectual in the law, and for the keeping and preserving the property aforesaid, to and for the separate use of her, the said Elizabeth, and so that the same shall not be in the power or disposal of the said Alexander R. McLaughlin, or *liable* to the payment of any

of his debts or any encumbrances; he, the said Alexander
R., doth for himself, his exectors and administrators, and for
each and every of them, covenant, declare, and agree to and
with the said John T. Lamar and his executors and admin-
istrators, by *these presents*, that notwithstanding the said
intended marriage shall take effect; the property of the said
Elizabeth shall be accounted, be reckoned, and taken as a
separate and distinct property and estate from the property
and estate of him, the said Alexander R., and in no wise lia-
ble or subject to him or to the payment of his debts, or either
of them, but shall be ordered, disposed, and employed to
such person, or persons, and to such use or uses and intents
and purposes, and in such manner and form as is hereafter
mentioned and declared; that is to say, that all the separate
and distinct estate before declared and allotted for the said
Elizabeth, shall be had, taken, held, possessed, and enjoyed
by the said Elizabeth, and further, that the said Elizabeth
may dispose of the said property by her last will and testa-
ment.   But in event of there being issue of the marriage
intended to be solemnized between the said Alexander R.
and Elizabeth, and the said Elizabeth departing this life with-
out will, or making other disposition of said property, then,
and in that event, the same shall go to and rest in the child
or children of the said Elizabeth and their legal representa-
tives in equal degree.   And if there be no child, or children,
or legal representative of children, then, and in that event,
the same shall go to and vest in said Alexander McLaughlin,
and that it shall and may be lawful to and for the said John
T. Lamar, at any time from and after the said intended mar-
riage shall take effect, to commence any action, or suit in
law, or equity in the name or names of said Alexander R.
and Elizabeth, his intended wife, against any persons for the
recovery of any sum or sums of money due or to grow due
to the said Elizabeth on the said separate estate of her, the
said Elizabeth as aforesaid.   And that the said Alexander R.
shall and will avow, justify, and maintain all lawful actions

Logan *vs.* Goodall.

and suits that shall be commenced for recovery of the premises, and will as often as desired thereto by the said John T. Lamar, join with the said Elizabeth, his now intended wife, in any receipts, release, discharge or assignment necessary to be given on receiving any of the money due, or to grow due to the said Elizabeth, as aforesaid. And also that the said Alexander R., his executors or administrators shall not nor will, at any time or times hereafter, do, commit, suffer, or cause to be done or committed, or suffered, any act, matter, or thing whatever, whereby, or wherewith, or by reason, or means of which the said Elizabeth shall or may be in any way frustrated or hindered in the having, holding and enjoying her said estate for her own separate use. Provided, also, and it is declared, concluded and agreed between the parties to these presents that the said Alexander R., his executors and administrators shall, from time to time, and all times hereafter, be indemnified and saved harmless out of the separate estate of the said Elizabeth, of, and from all manner of costs and charges, damages or troubles that he or they shall or may sustain, incur or be put unto by reason, or means of his, the said Alexander R. joining or being made a party in any action or suit for recovering any part of the said separate estate of the said Elizabeth, or joining or being made a party in any receipt, release or assignment to be made and given upon receiving any part of the separate estate of her, the said Elizabeth, as aforesaid, or on any other account, whatever, or relation to the said separate estate.

They next read in evidence a lease made the 11th July, 1836, by the Mayor and Council of Macon to John T. Lamar, as trustee for Mrs. McLaughlin, recorded February 1st, 1870, the body of which was as follows: "The said Mayor and Council of the city of Macon, for, and in consideration of the sum of $90 00, of the rents, provisos and agreements herein reserved and contained, which, on the part of the said John T. Lamar, trustee, as aforesaid, his executors, administrators and assigns, are to be paid done and

performed,' and by virtue of the acts of the General Assembly of the State of Georgia, authorizing and empowering the said Mayor and Council to sell and dispose of the said property, domain, land, or lots, to the said city belonging or appertaining, by lease for years or in fee simple, and of the ordinances of the said City of Macon, made in pursuance of said acts, have devised, leased, let and to farm let, and by these presents, do devise, lease, let and to farm let, unto said John T. Lamar, trustee, as aforesaid, his executors, administrators and assigns all that certain piece or parcel of land known and distinguished in the plan of the City of Macon, by two acre lot number fifteen, in the Western Range of two acre lots containing two acres, more or less. To have and to hold the said demised premises, with appurtenances unto the said John T. Lamar, trustee, his executors, administrators and assigns from the day of the date hereof for, and during the full term of nine hundred and ninety-nine years next ensuing, and fully to be completed, and ended, the said John T. Lamar, trustee, his executors, administrators or assigns yielding.and paying unto the said Mayor and Council of the City of Macon, or their assigns, on the first day of April in each and every year ensuing these presents, during the continuance of said term one copper coin; (provided the same be lawfully demanded,) and also paying and discharging from time to time, and at all times during the continuance of said term all taxes which may be levied or assessed of, or upon the said demised premises by the corporation of Macon, the State of Georgia or other lawful authority. And the said, the Mayor and Council of the City of Macon, for themselves and their successors in office, do covenant and agree to, and with the said John T. Lamar, trustee, his executors, administrators, and assigns that he the said John T. Lamar, trustee, his executors, administrators, and assigns paying the same yearly rent above hereby reserved and also paying all taxes upon said demised premises as above herein provided, shall and may lawfully, peaceably and quietly, have, hold, use,

Logan *vs.* Goodall.

occupy, possess, and enjoy the said demised premises with appurtenances, and every part and parcel thereof for and during all the said term of nine hundred and ninety-nine years hereby granted, without any let, suit, hindrance," etc.

It was admitted that said Mayor and Council had authority to make said lease. It was shown that John T. Lamar died in 1842. It was shown that, upon petition of Mrs. McLaughlin and her husband and children, George M. Logan was, on the 16th of April, 1869, by the Chancellor of Bibb county, duly appointed trustee, to succeed said John T. Lamar, with his powers, rights and duties as set forth in said papers, and that Logan accepted the trust.

Plaintiff then introduced A. R. McLaughlin as a witness, who testified that he intermarried with Mrs. Elizabeth W. McLaughlin, (then Bugg,) in Augusta, Richmond county, Georgia, in 1830; that at that time he resided in Macon, Georgia, and has resided in Macon up to October, 1866, and in the county of Bibb, near Macon, ever since. That his wife had a considerable separate estate inherited from her father, consisting of land, negroes, and other property and money, which was in the possession of himself and wife and trustee. And that the property mentioned in the deed from the City of Macon to said Lamar, trustee, was paid for out of proceeds of the separate estate of Mrs. Elizabeth W. McLaughlin, under the marriage contract. That said trustee was indebted to her for negro hire, and paid about one-half of the purchase-money in that way, and that he (witness) paid the remainder out of what he was indebted to the estate; that he was always indebted to the estate, though he had not kept her funds separate; that the south-east quarter of lot fifteen is the premises in dispute in the case, and contains one-half acre, and that said Theophilus Stewart was in possession thereof, at the commencement of this suit. There is now and was then, a house on the lot in dispute, and the same was and is enclosed with a fence. The premises in 1867, and since, have been worth for rent, an average of

$200 00 to $250 00 *per annum.* In 1843 the witness executed a deed individually to the partnership of White & McLaughlin, composed of witness and Joseph A. White, to lot number fifteen and other property, and has not since seen the deed.

Plaintiff offered to prove by said witness, McLaughlin, and counsel for plaintiff stated in their place that they expected to prove by him, to-wit: 1st. That the deed read in evidence to the jury by defendant, and executed by said witness to White and McLaughlin, was without any consideration, and that the one dollar purporting in said deed to have been paid as a consideration, was not in fact paid. 2d. That at, and before, the time said A. R. McLaughlin made said deed of conveyance of said lot to White and McLaughlin, as proven by defendants, that said White well knew and had notice that said lot was the separate estate of Mrs. E. W. McLaughlin under said marriage contract. This was objected to by counsel for defendants as irrelevant testimony, unless plaintiffs proved that McEvoy, and all intermediate purchasers between him and said White had similar knowledge and notice; and said plaintiff, having been called on by the Court, stated that he had nothing additional to offer as to that matter. Whereupon the Court sustained said objection and refused to allow plaintiff to make the proof aforesaid.

Here plaintiff rested. Defendant moved for a non-suit, but the motion was overruled. Defendant put in evidence the following deeds: A deed conveying said lot number fifteen from A. R. McLaughlin to White & McLaughlin (composed of himself and J. A. White,) made the 23d of May, 1843; a sheriff's deed made in March, 1849, whereby said property was sold under a sale on a *fi. fa.* against said White *et al.,* as the property of said White to Thomas A. Brown; a quit-claim deed from said Brown to White, made the 4th of January, 1857; a deed from said White to E. L. Strohecker, made the 1st of July, 1852, to one-half interest only;

a deed from said White's executor to Peter Stubbs, for the other half interest, dated the 15th of March, 1854; a deed from Stubbs to James A. Ralston, for his half, dated the 6th of June, 1859; a deed to part of the lot from Ralston to P. T. Bartram, made the 29th of April, 1862, and last, a deed from Bartram to R. P. McEvoy for that part sued for, dated the 1st of June, 1863.

Defendant then introduced W. B. Johnston, who testified that some time, from 1837 to 1840, McLaughlin was engaged in issuing individual change-bills; that he used the blanks of the Hawkinsville Bank, the issue to be redeemed at the Ocmulgee Bank; that said White being his partner was interested in the change-bill issues. He understood from both White and McLaughlin that they were going to invest the proceeds of the change-bills in city property, or were going to buy city property for security for redemption of said bills. He remembers to have heard that lot fifteen, of which the disputed premises is a part, was one of the lots that was to be purchased; that he heard a conversation between White and John T. Lamar, in which Lamar stated that this lot, No. fifteen might, or could be put into the batch of property designed for that purpose of indemnity. He remembers these conversations more fully on account of an understanding at one time that the property was to be sold to witness in satisfaction of an execution which he held against White, which agreement White's agent afterwards, while White was in the Mexican war, refused to carry out. On cross-examination he stated that the transactions he testified about all occurred *after* the partnership of White & McLaughlin was known to the public; that a secret partnership between them was before known to witness and Lamar; that he did not know, that the arrangement as to the purchase he heard White and Lamar speak of was ever carried out, or that any money was paid for that purchase; that he never saw any paid, but that after the conversations between Lamar and White as stated, Mr. Lamar recognized the property as that of White and

McLaughlin, and that afterwards White had the control of it.

Plaintiff, in rebuttal, introduced A. R. McLaughlin, who testified that he never knew or heard of any such arrangement as that testified to by witness, W. B. Johnston, and none such was ever made so far as he, McLaughlin, knows or *believes ;* that the public partnership between him and White never commenced until 1842; that there was a secret partnership between himself and White, and that began in 1839, while White was Cashier of the Ocmulgee Bank. The change-bills mentioned by witness, W. B. Johnston, were issued by him in 1842, and none were issued before that time.

On cross-examination, he stated that he was not present when the premises in dispute were sold at sheriff's sale as White's property, but that he saw the advertisements and was in Macon at the time, but did not attend the sale. Plaintiff then read from the answers of Mrs. E. McLaughlin (plaintiff *cestui que trust*) to interrogatories in the case :

1st. That she first learned she had a title to the lot fifteen in western range of two acre lots, about two and a half years ago.

2d. Witness' little son, in playing with a lot of old refuse papers which had been thrown aside as worthless, handed out this package of papers, and then my attention was called to them. On examination, I found they were the papers connected with my title to the abovenamed lot. This was my first knowledge that any such papers existed, not knowing of the existence of such papers until they were discovered. She cannot say how they were lost. Her answers to third interrogatory was ruled out, which is copied and set out in the rule *nisi* for a new trial.

Dr. E. L. Strohecker, sworn by defendant, said he bought from J. A. White the undivided half of lot fifteen, as is expressed in his deed at date thereof; paid the considerations specified, which was the full value at the time, or over; that he had known lot fifteen, western range, for several years, per-

haps since 1848; that White had been in possession or control during that time, and he knew of no other claims; that after Ralston became owner of an undivided half, he and Ralston divided or parted the lot, he taking the northwest half, lying on College street, and Ralston the southeast half, fronting on Orange street; that the lot was unimproved up to the time he sold, not enclosed.

On cross-examination, he stated that when he took the deed from White he did not inquire about the back deeds; was satisfied with J. A. White's deed; that White wanted money, and he bought the land to accommodate White.

Defendant next swore William P. Goodall. He swore he came into possession of the premises in dispute under Bartram's deed to R. P. McEvoy, as executor of the latter; that he put the improvements, or building, upon this part of lot fifteen in July, 1867; that they cost about $1,500 00; that the average value of rent since improved was about $275 00 per annum.

Next for defendant was Philo T. Bartram, who stated that he bargained the part of lot fifteen containing the premises in dispute in the fall of 1862, though he only took a deed for this part in 1863 (see deed;) that the lot was not enclosed when he bought it; that he enclosed it with a fence in the fall of 1862; that the lot with the improvements was .worth about $2,500 00; that he got no chain of titles; only received the Ralston deed to the said portion of Ralston's half.

Plaintiff's counsel requested the Court to charge the jury as shown by the motion for a new trial as hereinafter stated. The Court charged the jury as follows:

This is an action of ejectment by George M. Logan, as trustee for Mrs. McLaughlin, to recover a lot of land in this county. The action is against Mr. Goodall, as executor of Mr. McEvoy. These are the real parties in the case, and you are to determine from the law as I shall give it to you, and the evidence applied to the law, whether the plaintiff is entitled to recover. In actions of ejectment I charge you.

Logan *vs.* Goodall.

the law to be that the plaintiff must have a perfect title in himself. It is not necessary that the defendant should show title in himself, or have any title. The plaintiff must recover on the strength of his own title. Now, has the plaintiff shown title in himself as trustee for Mrs. McLaughlin? The only title offered by plaintiff to show title in himself is a deed of lease from the City of Macon, dated 11th July, 1836, to John T. Lamar, trustee for Mrs. McLaughlin, for the premises in dispute. The deed does not convey the land to Lamar, trustee for Mrs. McLaughlin, for her sole and separate use, and if you believe from the evidence that she was a married woman at the time, then, by operation of the law, the title to the property vested in her husband; and if you believe from the evidence that A. R. McLaughlin was her husband, no title ever did or could rest in Mr. Lamar to the exclusion of Mr. McLaughlin's marital rights, and no title ever did or could vest in Mr. Logan to the exclusion of her husband's rights; and if so, he is not entitled to recover, and your verdict should be for the defendant; and again the plaintiff relies upon an ante-nuptial marriage contract entered into in 1830, between Mr. and Mrs McLaughlin and Mr. Lamar, securing to Mrs. McLaughlin all her property received from her father's estate, or from any other source. This contract secures the property thus coming to her from her father's estate or otherwise to her sole use. An Act of the Legislature of Georgia, passed in 1847, requires all marriage contracts made prior to that time, to be recorded within twelve months from the passage of the Act in the county of the husband's residence. If the evidence satisfies you that the residence of Mr. McLaughlin was in Bibb county at the time of the execution of the contract, and the marriage contract was not recorded in Bibb county within one year from the passage of the Act, then I charge you that, if Mr. McLaughlin sold the land to a *bona fide* purchaser without any notice, actual or constructive, of the marriage settlement, the purchaser got a good title notwithstanding the marriage con-

Logan *vs.* Goodall.

tract. This is by operation of the Act of 1847. The Act requires that such marriage settlement as this should be recorded within twelve months from its passage in the county of the husband's residence, and it declares that, if it is not so recorded, then the marriage settlement shall not be of any force or effect against a *bona fide* purchaser without notice. If the marriage settlement had been recorded as required by law, the registry would have been sufficient notice to the purchaser. But the record in Richmond county is not notice to a subsequent purchaser. The notice may be actual or constructive. Actual notice is when the purchaser knows actually that there is a marriage settlement that secures the property to the wife. Constructive notice is sufficient if it would excite apprehension in ordinary minds, and prompt inquiry into the actual condition of things. Now, if you believe from the evidence that Mr. McEvoy had such notice, or if you believe that the persons under whom he claims had such notice, then on this branch of the case the sale by her husband is null and void, and the purchaser took no title. But if the purchaser did not have such notice, then he took a good title against all the world, notwithstanding the marriage contract. These principles have been so held by the Supreme Court, and is the law governing this case. To recapitulate: If the evidence satisfies you that the deed from the city to Lamar did not give the lot here sued for to the sole and separate use of Mrs. McLaughlin, then upon the execution of the deed, it vested in her husband by his marital rights, and the plaintiff is not entitled to recover.

And secondly, if Mr. McLaughlin sold this land to a *bona fide* purchaser without notice, actual or constructive, of the marriage settlement, and the present defendant, or his testator, Mr. McEvoy, bought it *bona fide*, and without any such notice, then the plaintiff is not entitled to recover. This you must determine from the evidence, and find your verdict accordingly. But if you believe from the evidence that the deed from the city to Lamar was for the sole and separate

use of Mrs. McLaughlin, then the title did not vest in her husband, but in her trustee, and he is entitled to recover. You will have the deed before you, and you must determine from that. Or, if you believe from the evidence that Mr. McEvoy, or those under whom he claims, had notice at the time they purchased of the marriage settlement, then they got no title, and plaintiff is entitled to recover. This you must determine from the evidence. You cannot infer it without proof.

If you find for the plaintiff, you will say: "We, the jury, find the premises in dispute for the plaintiff." And if you find the plaintiff entitled to rents for the use of the place, then ascertain how much, and if you find the improvements equal to the rents, then you cannot find anything for rent.

If you think, under the law and evidence, that plaintiff is not entitled to recover, then say: "We, the jury, find for the defendant."

The jury found for the defendant. Plaintiff's counsel moved for a new trial upon the following grounds:

1st and 2d. Because of the rejection of said evidence of A. R. McLaughlin.

3d. Because of the rejection of the following answer of Mrs. McLaughlin to the third interrogatory: That most of the time for twenty-three or twenty-four years previous to this date she (the witness) has been in indigent circumstances and part of the time really in a state of poverty. In rebuttal of the insinuation that she has practiced a fraud upon the parties who have bought and improved the lot number fifteen above referred to, she says that being in entire ignorance of her having any title or interest in the lot, she had no inclination to practice any fraud nor any inducement to practice any, and that she has done nothing in regard to the above mentioned lot, either with a view to establish her title or to ignore the title of any one else. If she had had any knowledge of the fact that she had any interest in lot number fifteen, she certainly would have made an effort long

since to establish the title and obtain the possession of the property, as she has stood in great need of this and which this property might have afforded her, and the said Court ruled out the same, and which ruling the plaintiff claims was erroneous. The Judge certified that he ruled out this answer because no offer to assail Mrs. McLaughlin's character or motives had been made.

4th. The Court erred in refusing to give in charge said third request asked for, and which was, and is as follows, to-wit: If Lamar (the trustee,) bought the property in dispute, and paid for it with the separate estate of Mrs. McLaughlin, then a complete and perfect equity vested in her, and her present trustee can maintain ejectment.

5th. Because the Court erred in refusing to give in charge the fourth request of the plaintiff, and which was and is as follows, to-wit: If the Court shall hold that the words in the deed from the City of Macon—"Lamar, trustee for Mrs. E. W. McLaughlin"—are merely *descriptio personœ,* and that the legal title by that deed vested in Lamar, that yet, if he paid for it with her separate estate her equity is perfect, and her present trustee can maintain ejectment, notwithstanding the naked legal title may yet be in the estate of Lamar.

6th. Because the Court erred in refusing to give plaintiff's fifth request, and which was, and is as follows, to-wit: That no marital right of the husband having attached to her property under the marriage contract, then such marital right cannot attach to property bought by her trustee and paid for out of the separate estate.

7th. Because the Court erred in refusing to give the sixth request asked, and which was, and is as follows, to wit: And further, on the last point, if the Court holds that the city deed conveyed title to Lamar *as* trustee, but that it contains no words excluding the marital rights, the Court will then charge, that as the husband by the marriage contract renounced all claim to, and covenanted never while she lived

to take any title to her separate property, therefore no marital right attached under the city deed.

8th. Because the Court erred in refusing to give the latter clause of the seventh request, wh'ch clause was, and is as follows, to-wit: That if the evidence shows that the premises in dispute were vacant, not in the occupancy of any one until the fall of 1862, and that the same have been occupied under paper title only since some day in June, 1863, then neither the clause of the Statute of Limitations nor prescription will protect defendant.

. 9th. Because the Court erred in refusing to charge the eighth request of plaintiff, which was, and is as follows, to-wit: That although the marriage contract was not put on record under the provisions of the Act of 1847, that fact cannot affect the validity or invalidity of a deed made in 1843 by A. R. McLaughlin. That no marital right having attached under the marriage contract, or by the deed from the city, McLaughlin had no title to convey; and as to any purchasers prior to the Act of 1847 from him or under him, they got no title from and under him; and that purchasers after the Act of 1847 having bought under, and claiming title through or from one who had no title, were not *bona fide* purchasers under the laws of the land.

10th. Because the Court erred in refusing the ninth request of plaintiff to charge, which was and is as follows, to-wit: That defendant did not get a full title through the deed to White and McLaughlin unless he proves title from both those purchasers; that a deed from White alone, or a sheriff's deed purporting to convey the title or property of White only, could give title to only one-half of the land, and an undivided half unless McLaughlin was present and assented; or by some positive act misled the buyer; that although he knew of the land being advertised, the law did not oblige him to go to the sale and notify buyers of his claim or title. Because each section of the charge as given was wrong, and because the verdict was contrary to law,

strongly and decidedly against the weight of the evidence, etc.

The Judge certified that he declined to charge the third and fourth requests because they were unauthorized by the evidence, and that he did charge the seventh request. He refused a new trial, and error is assigned on each of said grounds.

JOHN RUTHERFORD, B. HILL AND S. HALL, for plaintiff in error. 1st. John T. Lamar was, by the settlement, constituted trustee for Mrs. McLaughlin, although he was not styled trustee by the instrument: 2 Spence Eq. Jur., 20; and he had, if not directly, at least by necessary implication, all the power and estate vested in him which was essential to the performance of the office: Lewin on Trusts, 249, *et seq.* The husband's covenant to allow the use of his name in the bringing of suits, etc., did not limit and restrict, but enlarged the powers of the trustee. 2d. Upon the death of John T. Lamar, the trust under the provisions of this deed did not devolve on his personal representatives: Lewin, 266, *et seq.;* there is no such purpose expressed in the deed, nor is it to be inferred therefrom that such was the intention of the *cestui que trust:* 2 Spence Eq. Jur., 38. 3d. Neither could the trust under the circumstances of this case, upon the death of Lamar, devolve upon McLaughlin, the husband of the *cestui que trust*: Lewin, 260, 268, 269, 44, 121, 124, Note (X), 694; 2 Spence Eq. Jur., 507; and this is true notwithstanding what was said *obiter* and *arguendo* by the Judges, in Boston & Gunby vs. Cummings, 16 Ga., 111; 25 Ga., 283. The rule is properly laid down in Fears vs. Brooks, 12 Ga., 197; Lewin, 279. The trust, then, could have devolved upon no one but Lamar's legally appointed successor, who is the plaintiff in error: Picquet vs. Swann, 4 Mason's R. 4th. The deed from the City Council of Macon to Lamar, trustee, his executor, etc., under the circumstance vested the title in him as trustee of Mrs. McLaughlin,

and not in his individual right, because the land conveyed thereby was purchased with her funds, and a breach of trust cannot be imputed to him from this evidence alone; and further, because the transaction was executory and not executed: 2 Spence, 38; Lewin, 265; 2 Spence, 204, 203; Taylor vs. Plumer, 4 M. & Sel., 562; Lewin, 756. That this is an executory trust, see Adams' Eq., 40, 41, 42; 2 Spence, 128, *et seq.*, and is therefore to be construed and carried out according to the intention of the party, *ibid;* Crawford vs. Brady, 35 Ga. R., 190; Johnson vs. Hines, 31 Ga. R., 570.     5th. In any event, Mrs. McLaughlin has a perfect equity to this land, and on this she may maintain ejectment: Miller vs. Swift, 39 Ga. R., 91; Peterson vs. Orr, 12 Ga., 464; Pitts vs. Bullard, 3 Kelly, 5; 29 Ga., 490; and whether Logan is a regular trustee or not, Mrs. McLaughlin, who is a married woman, may enforce her rights by the use of his name: Revised Code, sec. 1764. 6th. McLaughlin, in making sale of this land to White and McLaughlin, did not act as trustee; he conveyed only his own title, which was no title at all; his title was a nullity, and no one claiming under him had anything on which to found even a color of title ;neither he nor his vendee, nor any subsequent purchaser from them, was in possession of the land until the end of the year 1862.     During this entire period Mrs. McLaughlin was under coverture and had no trustee, nor until recently had she any notice of her interest in the premises, and, therefore, is not barred either by the Stattute of Limitations, or by prescription: Scott, administrator, vs. Haddock and wife, 11 Ga. R., 258.  7th. The sale by McLaughlin to himself and White was a sale with notice, and a fraud: 2 Spence, 760; and there were also many circumstances of a striking and unusual character to put *mesne* conveyancers upon notice; as, for instance, the nominal consideration expressed in the deed from McLaughlin to White and McLaughlin, the sale of White's interest by the sheriff, and the purchase by Brown and re-conveyance by him to

Logan *vs.* Goodall.

White for a merely nominal consideration ; the gross negligence under so many suspicious circumstances, and the failure to make inquiry, will charge the parties with notice : 2 Spence, 754, 757, 758.    8th. The Court erred in holding McLaughlin incompetent to prove that the deed from him to White and McLaughlin was without consideration : Rev. Code, sec. 3798.    In this suit McLaughlin was not estopped by his deed to himself and White to speak the truth : 1 Starkie, 99, 460.    There was manifest error in rejecting evidence to show that White had notice of Mrs. McLaughlin's equitable title, unless she would state that she expected to bring home notice to subsequent purchasers under him.    9th. The Court committed error in applying the provisions of the Act of 1847, requiring the registry of marriage agreements (Cobb's New Dig., 180) to the sale and transfer of the premises in this case.    The Act, by its terms, does not embrace sales made and completed prior to its passage, nor does it declare the settlement void where the sale is made by any other person than the husband, but on the contrary expressly excludes such transactions ; it is not to be construed retrospectively, or to have a retroactive effect : Smith's Comm., sec. 533 ; 16 Ga., 109 ; Park on Dower, 24 ; 14 Ga. R., 77 ; 15 *ib.*, 96 ; 34 *ib.*, 386 ; Rev. Code, sec. 7 ; 47 Ga., 423, 380. It is not to be extended beyond its letter : 16 Ga., 111 ; 25 Ga., 283 ; 20 *ib.*, 223 ; 32 *ib.*, 163 ; 35 *ib.*, 192 ; 28 *ib.*, 170. Prior to the passage of the Act, any sale made by the husband was void, and there is no provision in the Act for the confirmation of such sales, and none whatever protecting the rights of parties holding under the feofee of the husband, who became such prior to the passage of the Act.    Validity can only be given to avoid act by the transcendant power of Parliament : Comyn's Dig. Confirmation, (D. I,) (D. 5) ; Touchstone, 311, 312, 314 ; 2 Peters R., 662.    That the feofee of the husband prior to the passage of the Act, and his conveyance, was not designed to be protected by the Act, and finally that he and the husband are not one and the same person : 25 Ga. R., 282 ; 33 *ib.*, 231 ; *ib.*, 565.

WHITTLE & GUSTIN, LANIER & ANDERSON, for defendant, furnished no brief to Reporter.

McCAY, J.

1. By the express terms of the marriage settlement, the intended husband contracts with Lamar, that the property of the intended wife shall be free from his marital rights, and this not only, as to the property she then had, but as to any property she might thereafter become entitled to, in any manner whatever.

By the rules of common sense, by our Code, and by the common law, this, *ipso facto,* makes Lamar the trustee of this settlement. Here is a *contract* with him for the *use* and *benefit* of the intended wife : See Rev. Code, sec. 2279–2281. The whole scope and design of the parties was to clothe him with the legal right to protect the wife in the separate estate provided for her. Whatever estate it is necessary for the trustee to have in order to carry into effect this triparte contract, the law confers upon him : Code, sec. 2314.

This was a mere naked trust, a confidence reposed. Ordinarily, the trustee is clothed with the legal estate, in terms, and his character, as trustee, grows out of the limitations placed upon his legal title. If he sell to one, with notice of the trust, or if he die, and the legal title pass to his heirs, in either case the trust follows the title. It is *imposed* by law upon the holder of the legal estate. The trust, or confidence of the grantor, is personal in the trustee and at his death, or upon his abuse of the trust, the Court of Chancery will appoint a new trustee and direct a conveyance of the title to him. The trusteeship of the heir of the trustee is not by virtue of the original appointment, but by virtue of his having the title, which the law couples with the same trust, as was attached to it, in the hands of his ancestor. In this case, there is no *title* conveyed to Lamar ; he only takes such rights in, and power over the property, as is necessary to effect the objects of the settlement. At his death nothing

passed to his heirs, because, the confidence did not pass, and it was only, by virtue of that confidence and for the purposes of conforming to it, that Lamar had anything in the property.

We are inclined, too, to the opinion that, in general, in this State, it has never, at least for many years past, been considered, even when the legal title was expressly conferred upon the trustees, that the heir acquired any legal rights. The death of the trustee, has always been considered a termination of his interest, unless it was neceesary, for his own protection, that the interest should continue, as if he was in advance to the *cestui que trust*, etc.

Be this as it may, Courts of Chancery have always in cases of express trusts, exercised the power of appointing a new trustee, on the death of the appointee, of the parties, unless the trust be, by the terms of the deed, continued; and, even then, if, for any cause, it become necessary, in order to carry out the object of the trust. Hill, on Trustees, 190–194.

2. Previously to the Code, which alters the law in this particular, (Rev. Code, sec. 2281,) it was necessary, in order to create a separate estate in the wife, that distinct words, to that effect, be used or that the nature of the conveyance must be such as to exclude the marital rights of the husband. The mere creation of a *trust* for the use of the wife, by a stranger, was not sufficient: 19th Georgia, 577; 35th Georgia, 190.

3. Under this rule, the lease to Lamar, for the use of Mrs. McLaughlin, was to the use of *the husband*. There was nothing in the deed to *exclude* his marital rights, and he had the same right to dispose of it, to one who knew nothing of the title but what appeared upon the face of the paper, as if the deed had been in terms to him.

But, as is apparent from the record in this case, the husband never sold more than the undivided one-half of this property. It is true, he made a deed to the firm of which

he was one of two members, of the whole lot; but that still left him the owner of one undivided half. The sale, by the sheriff, of the lot, as the property of White, could only pass White's interest.

4. Nor could White himself, by his deed to anybody, pass more title than he himself had, to-wit, the one undivided half. So of all the deeds from White's vendees; they could not, by their mere multiplication or diversity, add to the title of White. In other words, as appears from this record, one undivided half of the original lot, as leased to Lamar, is still, as to title, just where it was at the date of the deed to Lamar. This defendant has no interest in it; his chain of title does not cover it; nor, with any consent of the owner of it, has it ever been separated from the other half. Why should not the trustee recover? He stands, by appointment of the Court, in the shoes of Lamar. Even as trustee, under the terms of the deed, the title to one undivided half is in him.

McLaughlin is not *asserting* his marital rights, under the deed. Why should not Logan, as trustee for Mrs. McLaughlin, answering as he does to the *very terms* of the lease, maintain ejectment in the title?

When it is replied that, under the law as it stood then, the effect of this lease was to create a title in McLaughlin, the answer is conclusive that, as between McLaughlin and his wife, the marriage settlement is good, though not recorded, and that if this lease was paid for with money belonging to her, as her separate estate, he is estopped by his own deed from setting up his marital rights.

We are not sure that even by the strict rules of the common law, the wife, or rather her trustee, would not, as against a stranger, have the right under such circumstances. But, under our Code, which allows a party, to go on at law, if he sees fit so to do, we think the right of Logan, as trustee for Mrs. McLaughlin, to maintain an action for the one undivided half is clear.

Logan *vs.* Goodall.

As to the undivided half sold to White, and by White, through various conveyances, to the defendants, White, if he had no notice of the truth, or the subsequent purchasers without notice, got a good title, they are presumed to have seen the deed to Lamar. Any lawyer would have told them that under that deed, as the law stood, McLaughlin had a right to sell. They were not bound to inquire further. They are innocent purchasers without notice, and no concealed equity, such as this unrecorded settlement, or the fact that the money of the wife paid for the lease, can be set up against them.

We have been unable to see what the sheriff's sale has to do with this matter—none of these parties claim under that. The fact that the whole lot was sold by the sheriff, as White's, to Brown, and by Brown reconveyed to White, did not and could not add to the original interest of White. The purchasers from him took his title and nothing more; and this is true, even if McLaughlin had so acted, at the sale, as to mislead the bidders. When White became the purchaser from Brown, the sheriff's sale became a mere episode, and the title in White was that he acquired under the deed of McLaughlin to the firm.

But it would be carrying the doctrine of estoppel very far, to hold one estopped from setting up a title to property sold as the property of another, at sheriff's sale, for the reason that he knew it was advertised to be so sold. There is no pretense that he was at the sale, or did anything to mislead the purchaser.

We have not discussed the question, so elaborately argued by the counsel, as to the effect of the failure to record this marriage settlement, under the Act of 1845, upon subsequent purchasers of property, which had been sold by the husband *previously* to the passage of the Act, because *this* property came into the community, under the deed to Lamar. *Prima facie*, this gave the right to McLaughlin to sell. The purchasers had a right to buy, and the case presented is one

of setting up a concealed equity in order to avoid an apparent legal right.

We do not decide the question we have alluded to. The argument for the plaintiff in error was very strong, but as the question is of great importance, and does not, as we think, arise in this case, under the view we have taken of it, we leave it for future consideration.

5. According to the view we have taken of this case, the plaintiff, as the record stands, is the owner of the one undivided half of the land described in the lease to Lamar. A tenant in common may recover the whole from a stranger, or his undivided half from his cotenant, who is in adverse possession of the whole, or of any part of the whole: Rev. Code, 2283–2284. The effect of a verdict is not to dispossess the cotenant, but to put both in possession of the whole. What equities there may be, between them, based upon improvements made in good faith, and under a belief of a perfect title, or what equities there may be between the different purchasers, under the several deeds from White, we do not decide. But we simply say, that equity will not permit, injustice to be done, nor allow one tenant-in-common to get the benefit of improvements made, by his cotenant, under the honest belief that the title was wholly his.

Judgment reversed.

WARNER, J., concurring.

The deed from the city of Macon to John T. Lamar, as trustee for Mrs. McLaughlin to the two-acre lot did not create a separate estate in her, and the marital rights of her husband attached thereto, and vested the title in him by operation of law; the deed of A. R. McLaughlin, the husband, to the firm of White and McLaughlin, conveyed the one undivided half of said lot to White, the other undivided half was the property of McLaughlin. The sheriff's sale under an execution against White, and the sheriff's deed conveyed only such title as White had in the property, which

was only one undivided half thereof, and all the subsequent purchasers of that undivided half of the lot deriving their title through the original conveyance of McLaughlin to that undivided half of the lot, who were *bona fide* purchasers, claiming under that original conveyance of title by him, are entitled to be protected as such against the plaintiff's action to recover the land. The plaintiff's counsel requested the Court to charge the jury, "That defendant did not get a full title through the deed to White & McLaughlin, unless he prove the title from both these purchasers; that a deed from White alone, or a sheriff's deed purporting to convey the title or property of White only, could give title to only one-half of the land, an undivided half, unless McLaughlin was present and assisted, or by some positive act misled the buyer; that although he knew of the land being advertised, the law did not oblige him to go to the sale and notify the buyer of his claim or title." This charge, in view of the facts of this case, should, in my judgment, have been given to the jury. The fact that there was an outstanding title in McLaughlin to the undivided half of the land obtained in virtue of his marital rights, as the husband of his wife, who had *notice of the trust* and that the land was purchased with the *trust funds*, could not be set up as a defense to defeat the plaintiff's right to recover that undivided half of the lot in dispute, nor would the facts relied on operate as an estoppel to conclude the rights of McLaughlin to sue for the undivided half of the land, much less the plaintiff, whose trust funds paid for it, as against McLaughlin's title to the undivided half-interest in the two-acre lot conveyed by the city of Macon, who had notice at the time he acquired his title thereto, that the land was paid for with the trust funds of the plaintiff under the marriage settlement.