THE THEDFORD MEDICINE COMPANY *v.* CURRY.

The declaration as amended alleging, in substance, that the plaintiffs were profitably engaged in the manufacture and sale of a certain valuable medicine; that the defendant fraudulently, deceitfully, and with intent to injure the plaintiffs' business, did manufacture, under a similar name, a spurious and inferior medicine in imitation of that made by the plaintiffs, and, by simulating the wrappers used by the plaintiffs in putting up their medicine, did deceive the public and thus sell large quantities of the spurious medicine as the genuine, all of which was to the plaintiffs' injury and damage, a cause of action was set forth, and the demurrer to the petition should not have been sustained.

April 8, 1895. By two Justices. Brought forward from the last term.

Action for damages. Before Judge HENRY. Floyd superior court. March term, 1894.

To the petition of the M. A. Thedford Medicine Company against Curry, as amended, the defendant demurred. The demurrer was sustained, and plaintiffs excepted.

The petition alleged: Plaintiffs have been in business in Rome, Ga., since November, 1890, in manufacturing and selling medicine now called M. A. Thedford's Black Draught, which they prepared and sold for profit long before January 1, 1894. Curry, a wholesale and retail druggist of Rome, intending to injure plaintiffs in the sale of their said medicine and to deprive them of their profits from the sale thereof, has been and is selling said medicine since January 1, 1894, up to the filing of this writ, as being of plaintiffs' manufacture, said medicine being deceitfully and fraudulently prepared and made in imitation of that of plaintiffs' manufacture, which was not so but was in fraud of their rights; and he is doing this both in Rome and the country adjacent. The

medicine so sold by him has printed and inscribed on
its wrapper certain words, names, etc., which bear so
close a resemblance to the name, words, etc., on the
wrappers of plaintiffs' medicine, that this is calculated
to and does deceive the public generally as to the char-
acter of such medicine, using the words "Thedford" and
"Black Draught" on said wrappers, which he had and
has no right to do. Copies of plaintiffs' wrapper, trade-
mark, name, etc., and of the wrapper of the medicine
sold by Curry, are attached as exhibits. He is and
has been selling said medicine without their consent or
authority, against their protest and to their damage
$2,000. For a long time before January 1, 1894, and
at the time of the committing of the grievances charged
in this declaration, plaintiffs prepared and sold for profit
large quantities of a medicine called M. A. Thedford's
Black Draught, which they then and since used and
were accustomed to sell, having printed on the wrappers
thereon the words, " M. A. Thedford's Black Draught."
They have acquired fame and reputation with the pub-
lic on account of said medicine so by them prepared
and sold, and great profit and gain; yet defendant, well
knowing the premises, but wilfully, subtly and unjustly
intending to injure plaintiffs in the sale of their medi-
cine, and to deprive them of the gain and profit which
they would otherwise have acquired by preparing and
selling it, on January 1, 1894, and at other times be-
tween then and the beginning of this suit, did wrong-
fully, knowingly, fraudulently, against the will and with-
out the consent of plaintiffs, sell some 2,000 packages
of certain articles represented and termed by him to be
medicine, in imitation of the said medicine, enclosed in
wrappers with words printed on them similar to those
so prepared and sold by plaintiffs; and said Curry did
sell said packages of medicine so prepared and sold by
him, in packages having printed on the wrapper in

which they were enclosed, among other words, the words, "M. A. Thedford & Co.'s Black Draught," in order to denote that the medicine was the genuine medicine prepared and sold by plaintiffs. And he on the several days mentioned did knowingly and deceitfully sell for his own gain said last mentioned packages of the said articles, represented and termed by him to be as of medicine by the name and description of "M. A. Thedford's Black Draught" which had been prepared and sold by plaintiffs; whereas in fact plaintiffs had never been the preparers or sellers thereof or any part thereof. By reason of which plaintiffs were fraudulently hindered and prevented by defendant from selling and disposing of divers large quantities of medicine, to wit, some 2,000 packages of the said medicine which they would otherwise have sold and disposed of. And they were also deprived of divers large gains and profits which would otherwise have accrued to them from the sale of their own medicine called and marked "M. A. Thedford's Black Draught," and were otherwise greatly injured in the selling and vending of their said medicine. By reason of these sales by defendant, they have been defrauded of large profits which they would have otherwise realized. Their credit has been greatly injured by these sales by defendant, who has realized large profits from the sale of said medicine under the circumstances before related. They were greatly injured and damaged also in their reputation, by reason of this medicine sold by defendant without right and contrary to law, the said medicine thus sold by defendant being inferior in quality to the genuine medicine manufactured and sold and put upon the market by plaintiffs. And defendant has by his action as aforesaid damaged plaintiffs by circulating injurious letters and reports among their customers, in that he sent a letter to Pope & Co., of Fayetteville, Alabama, who were customers of plaintiffs, and who re-

ceived said letter from defendant, dated February 8, 1894, in which were the following words: "We have no interest in either company, but from the best information we can get, Thedford sold out years ago, and has no moral or legal right in the premises"; which was deleterious to plaintiff's business standing and character to the extent of over $500.    All of which above acts and doings of defendant have been done with the intention of injuring and defrauding petitioners; and he knowingly defrauded them by making said sales and delivering said medicines as aforesaid, and thereby not only deprived them of the advantage which they would have derived from the sales of their own medicine manufactured by them, but by reason of his fraudulent and deceitful conduct which he wilfully and knowingly perpetrated.    They have also been damaged $1,000 by the loss of profits which they would have realized by the sale themselves of said medicines of their own manufacture, a spurious and counterfeit kind of which was sold by defendant purporting to be of plaintiffs' manufacture, by the means already related, which were calculated to and did deceive the public.    By means of all which plaintiffs have been injured and damaged $2,000.

The demurrer was on the following grounds: No cause of action set forth.    Failure to show when the medicine of plaintiffs was first called M. A. Thedford's Black Draught, or that it was so called before the medicine alleged to have been sold by defendant was so called, or that plaintiffs have any exclusive right to manufacture or sell the medicine, or why defendant has no right to use the word "Thedford" or "Black Draught," or why plaintiffs have that exclusive right, or that plaintiffs had acquired or had an exclusive or prior right to the use of its wrapper or any part thereof, or that their wrapper was made or used prior to the

using or making of the other wrapper exhibited, or why plaintiffs' consent or authority for the sale of the medicine by defendant was necessary, or how plaintiffs have been defrauded of profits, or how said profits could have been realized. And no facts are stated showing that defendant has sold medicine without right, or contrary to law.

C. ROWELL, for plaintiff. FOUCHÉ & FOUCHÉ, J. BRANHAM and J. L. HOPKINS & SONS, for defendants.

LUMPKIN, Justice.

The reporter's statement sets forth, in brief, the substance of the plaintiffs' declaration, as amended, and of the demurrer filed to the same. While the declaration is, perhaps, unnecessarily voluminous, and contains numerous allegations which would not, of themselves, show any right of recovery, we think that as a whole it sets forth a cause of action, and that it was error to sustain the demurrer.

The most material allegations of the declaration are summarized in the head-note. It would seem, that if the plaintiffs were engaged in a profitable business, which consisted of the manufacture and sale of a really valuable medicine; and the defendant fraudulently, deceitfully, and with the intent to injure that business, manufactured under a smilar name a spurious and inferior medicine in imitation of that made by the plaintiffs; and, for the purpose of carrying out the fraudulent intent already mentioned and unjustly making money upon the reputation which the plaintiffs had established for their medicine, simulated their wrappers and thus deceived the public into buying large quantities of the spurious medicine as the genuine, and in consequence reducing the plaintiffs' sales and causing them injury and damage, a wrong was committed for which the law should afford a remedy in damages.

What the proof may disclose at the trial we cannot, of course, anticipate; but if the defendant did all that the plaintiffs charge, for the purpose and with the result alleged, the case is one which should be passed on by a jury. The principle upon which we think the case should have been retained for a hearing is intimated by Chief Justice LOCHRANE at the conclusion of his opinion in the case of *Ellis* v. *Zeilin & Co.,* 42 *Ga.* 95. After stating that the court did not think there was equity in the bill filed in that case, on the mere question of similarity in the trade-marks, he added : " But as the demurrer admits that what was done was done intentionally to take advantage of the reputation of his ' Simmons' Liver Medicine,' we cannot hold the judge below erred in retaining the bill for a hearing to let the whole matter be determined upon its merits."

It was strongly insisted in the present case, however, that under the allegations of the plaintiffs' declaration, and in view of the exhibits thereto attached purporting to be the two wrappers in question, the defendant did not really simulate the plaintiffs' wrappers, and that there was no such similarity between them as would deceive persons of ordinary observation. Whether there was, or was not, a fraudulent simulation of the plaintiffs' wrappers was, as remarked by Chief Justice BLECKLEY in *Foster, Milburn & Co.* v. *Blood Balm Co. et al.,* 77 *Ga.* 216, at bottom a question of fact, rather than of law. At any rate, the declaration distinctly alleged there was such a simulation, that its intent was fraudulent, and that its results were as matter of fact highly injurious to the plaintiffs' business.

On the whole, we think that the question whether or not the label or device used by the plaintiffs had become such a badge of origin and ownership as to be the subject of protection against a colorable imitation likely to deceive the public and injure the proprietors in their

trade, was one for determination by a jury, and not for final solution by the presiding judge.

*Judgment reversed.*