(76 Misc. Rep. 615.)

### HART v. SHURTLEFF et al.

(Supreme Court, Equity Term, Lewis County. December, 1911.)

1. WILLS (§ 439*)—CONSTRUCTION—INTENTION OF TESTATOR.

The court, in construing a will, must seek to discover the intention of testator, as gathered from the language used, guided by the settled rules of construction, together with the circumstances and the relation of the parties.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

2. WILLS (§ 601*)—CONSTRUCTION—ESTATES DEVISED.

Testatrix gave her home to a granddaughter, provided testatrix did not sell the same during her lifetime, and declared that, if the granddaughter should be a minor at the time of testatrix's death, the granddaughter should have the use of the home until she became 21, and empowered the executor to sell and convey the property, and, in case of a sale by testatrix or the executor, the granddaughter should receive a specified sum, and in case the property was not sold the same should go to the granddaughter, together with a specified sum, and directed the executor to hold the property for the granddaughter until, in his wisdom, he should think it advisable to transfer the same to her, and declared that, on the death of the granddaughter without descendants, the property should go to persons named. Held, that the granddaughter took a fee, subject to the control by the executor during her minority; but the authority of the executor to withhold the estate from her could not be arbitrarily exercised.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1340–1350, 1608; Dec. Dig. § 601.*]

3. WILLS (§ 601*)—CONSTRUCTION—DEVISE IN FEE.

Where there is a clear and certain devise of a fee, the estate will not be lessened by subsequent words of the will, which are ambiguous.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1340–1350, 1608; Dec. Dig. § 601.*]

4. WILLS (§ 545*)—CONSTRUCTION—GIFT OVER IN CASE OF DEATH OF BENEFICIARY WITHOUT ISSUE. ·

Where there is an absolute gift, denoting an intention that the beneficiary shall take the same absolutely at the testator's death, and there is a gift over in case of the death of the beneficiary without issue, the will refers to death without issue prior to the testator's death, and the beneficiary, surviving testator, takes absolutely.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1171–1176; Dec. Dig. § 545.*]

5. EXECUTORS AND ADMINISTRATORS (§ 138*)—CONSTRUCTION—ESTATES DEVISED.

Testatrix devised two parcels of land to a granddaughter for life, with gift over to her ·descendants, and provided that, in case of a sale thereof, the avails should be held in trust to pay the income to her for life, and at her death to her descendants. She appointed a trustee, and empowered her executor to sell the real estate, and provided that, in case of a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sale, the avails should stand in the place of the real estate. *Held*, that the granddaughter took an estate for life, with remainder over to her descendants in fee, subject to being divested by the executor selling under the power conferred.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560–566, 568, 569–575; Dec. Dig. § 138.*]

6. EXECUTORS AND ADMINISTRATORS (§ 138*)—POWER OF EXECUTOR—CONSTRUCTION.

A will devising real estate to a beneficiary for life, with gift over to her descendants, and empowering the executor to sell the property and hold the avails in place of the real estate, and appointing a son of testatrix executor, conferred on the executor a purely personal power of sale, not surviving him.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560–566, 568, 569–575; Dec. Dig. § 138.*]

Action by William S. Hart, substituted trustee of Sylvia Foster, deceased, against Louisa H. Shurtleff and others, for the construction of the will of the deceased. Judgment construing will.

C. S. Mereness, for plaintiff.

Frank Bowman and Harry C. Shurtleff, for defendant Louisa H. Shurtleff.

F. C. Schraub, for defendants Abbie Evans, Clara Chapman, Foster Evans, and Ethel Evans.

E. J. Boshart, guardian ad litem, for Alma Evans and Ethel Evans, infant defendants.

L. C. Davenport, for defendant Lillian L. Foster, and guardian ad litem, for infant defendant Vivien L. Foster.

MERRELL, J. This action is brought to obtain construction of the second and third clauses of the last will and testament of Sylvia Foster, late of the town of Turin, Lewis county, N. Y., deceased. The will bears date January 19, 1891, and the testatrix died March 4, 1891, leaving as her only heirs at law and next of kin, her surviving, S. Olin Foster, a son, who is named as executor and trustee in the will, and Abbie Evans and Louisa F. Hammond, granddaughters, children of Harriet F. Hammond, a deceased daughter of testatrix. The will was admitted to probate in Lewis County Surrogate's Court March 23, 1891, and letters thereon issued to S. Olin Foster, sole executor and trustee. The estate amounted to something over $25,000.

The chief difficulty arises as to the construction of the second clause of said will. That clause reads as follows:

"Second: The house and lot in Turin, N. Y., where I now reside I give and bequeath to my granddaughter Louisa F. Hammond provided I shall not have sold the same previous to my decease; and if the said Louisa shall not have arrived at the age of twenty-one years at the time of my decease, she shall have the use of said house and lot until she is 21 years of age; and I empower my executor hereinafter named to sell and convey said house and lot. In case I sell the same or if my said executor sells and conveys under the power herein given, then I give and bequeath to my said granddaughter Louisa the sum of four thousand five hundred dollars; and in case the said house and lot are not sold, then I devise the same to my said granddaughter Louisa together with the sum of twenty-five hundred dollars. But I direct my

executor and trustee hereinafter named to hold the property herein given to said Louisa until in his wisdom he shall think it advisable and proper to pay over and transfer the same to her, and until he shall so pay over and transfer same I direct him to receive the income and interest therefrom in trust and pay over the same annually to said Louisa. Provided said Louisa dies without descendants, then I give, devise, and bequeath to my executor and trustee hereinafter named, one-half of said house and lot and twenty-five hundred dollars or one-half of said sum of forty-five hundred dollars, as the case may be. In trust nevertheless to receive the rents, interest and income thereof, and pay over the same annually to my granddaughter Abbie Evans, during her lifetime and at her decease to pay over the same to the descendants of said Abbie; and the other half of said house and lot and $2,500 or of said forty-five hundred dollars I give and bequeath to my said son S. Olin upon the decease of said Louisa without descendants."

The house and lot mentioned was sold by said executor subsequent to the death of testatrix and after Louisa F. Hammond had attained her majority. The sum of $1,600 was realized thereon. Instead of making the fund for the benefit of Louisa up to $4,500, as directed by said will, the trustee seems to have regarded said trust fund as being only $4,118.75, and the beneficiary appears to have been satisfied with such arrangement. From the time of his appointment down to January 16, 1911, when he died, S. Olin Foster acted as trustee under said will, and retained under his control the said fund, paying the beneficiary interest thereon, less commissions and expenses. No part of the corpus of said fund was ever turned over by said trustee to the beneficiary.

At the time when said will was executed Louisa was but 15 years of age. Her mother, the daughter of testatrix, had died when Louisa was but 6 years of age. After her mother's death, she lived with the testatrix, her grandmother, until the latter's death. After the grandmother's death, Louisa lived with her uncle, S. Olin Foster, the trustee named in the will, until she became 21 years of age. Abbie Evans was a half-sister of said Louisa F. Hammond, being a daughter of Harriet F. Hammond by her first husband, and at the time of the death of testatrix was married and had three children, aged, respectively, 3, 6, and 8 years. All of said children of Abbie Evans are still living, and, with two more children born since the death of testatrix, are defendants in this action. The largest part of the property of testatrix passed under the will to the son, S. Olin Foster.

Prior to reaching 21 years of age, Louisa appears to have been industrious, learning the milliner's trade and working thereat for a number of years, before and after reaching her majority, in various parts of the country, until her marriage in July, 1905, to Harry C. Shurtleff, an attorney in good standing and enjoying a lucrative practice at Montpelier, Vt. This marriage was preceded by some years of acquaintance between the contracting parties, during which Mr. Shurtleff had visited Turin on several occasions, had been entertained by and in the family of said S. Olin Foster, and the latter, since said marriage, had visited his said niece and her husband in their home at Montpelier, Vt.

[1] In construing testamentary provisions, the chief end to attain is to discover, if possible, the real intent of the testator. The desire,

which comes with age and approaching dissolution, to make a proper disposition of one's property, to select the recipients of one's bounty, and, in some measure, to regulate the channels through which the accumulations of a lifetime are to pass after death, is at once natural and proper. Here we find this old lady making a will, wherein she directs a distribution of her entire estate among and for the benefit of her blood relatives. To her son, S. Olin, whom she apparently held in most affectionate regard, and in whom she reposed the utmost confidence, as her only living child, she gives the bulk of her estate. To her granddaughter, Abbie Evans, and for the benefit of her children, substantial provision is made. And, finally, the testatrix unquestionably desired to make a substantial gift to and for the benefit of her little grandchild, Louisa F. Hammond, who had lived with her since her daughter's death, in the very house which she devises to her by this second clause. From all the circumstances of the case, and the other provisions of the will, no reason can be discovered why this grandchild of tender years should not have been the recipient of substantial bounty under her grandmother's will, and what could be more natural than to devise to her the home in which they had passed 9 years together, during which time Louisa unquestionably filled the vacancy caused by the death of testatrix's daughter. In reaching the true intent of the testatrix, we must be governed by the language used, so far as the same is coherent, and, if possible, guided by well-settled rules of construction established by the courts, together with the circumstances and the relation of the parties, determine the testamentary intention.

[2] In this second clause we have the plain and unequivocal provision giving to the granddaughter of the testatrix the house and lot in Turin and $2,500, or, in the event of the conveyance thereof by testatrix in her lifetime, or by the executor after her decease under the power of sale, that the sum of $4,500 should take the place thereof. Except for the remainder of the second clause, we have a straight devise and bequest to the granddaughter; but in language apparently in derogation of the first plain provision, which is an absolute gift of the property mentioned, we find an apparently antagonistic provision, diametrically opposed to what has preceded it, to the effect that the executor is to hold the property thereinbefore absolutely given, or, as the testatrix says, *"herein given to said Louisa,"* until, in the wisdom of said executor, he shall think it advisable and proper to pay over and transfer the same to her, and providing for the payment of the income therefrom annually to said Louisa *"until he shall pay over and transfer. same,"* and then follows a provision that, in the event of the death of Louisa without descendants, the property thereinbefore given her shall be equally divided, one half to go to her son, the executor and trustee named in the will, and the income of the other half to be paid to Abbie Evans during her lifetime, with the remainder over to her descendants.

These provisions, following the absolute gift to Louisa, and read in connection with the first unequivocal provision absolutely giving to

Louisa the property mentioned, at least so far as they relate to the time after Louisa shall have become 21 years of age, are, to say the least, ambiguous and of doubtful meaning. Having made a clear and certain devise and bequest for her granddaughter, who not only had been bereft of the love and care of a mother at the tender age of 6 years, but whose father, disregarding the natural promptings of fatherhood, had, 3 months after the death of testatrix's daughter—the mother of Louisa—again married, deserting his little daughter for a new-found affinity, it is unreasonable to believe that the testatrix, by any subsequent provision, intended to take away and ultimately deprive her little granddaughter of her bounty. It is entirely consistent and reasonable that during the latter's tender years, and until the property could legally be held by Louisa as against claim thereto by the unnatural father, the testatrix thought proper to provide for its control by her son, Olin, who was many years the senior of Louisa, and it is quite reasonable that on reflection the testatrix deemed it imperative to invest the son, Olin, with authority to temporarily withhold the actual control and possession of the estate until, in his wisdom, the time had arrived when Louisa could properly manage and preserve her property.

I am clearly of the opinion that the property vested in Louisa under this first plain provision, and that the words following were merely intended to provide for a temporary control in Olin until Louisa should have reached years of discretion and the time should have come when she could legally hold the property as against her father or any one else. And it seems to me that, reading the clause as a whole, the intent of the testatrix was merely to appoint Olin the temporary custodian of the estate already absolutely given to Louisa, and that, so far as there was any discretion in Olin concerning the property, it was merely as to *when* Louisa should be placed in possession and control thereof, rather than as to whether it should be turned over to her. It is equally plain to me that it was the intent of the testatrix that Olin at *some time* should turn over this estate to Louisa, and that it was more than a mere authority and power conferred upon him, and was an imperative and mandatory provision, and that its exercise should be compelled. Smith et al. v. Floyd, 140 N. Y. 337, 342, 35 N. E. 606.

As matters ultimately worked out, there was a gross impropriety in S. Olin Foster serving as trustee in relation to this fund, and the manner of administration thereof is open to criticism. Subsequent to the death of testatrix, the house and lot devised to Louisa was sold to the executor (it is true, with the consent of Louisa) for $1,600. The trust estate was then, under some theory not entirely clear, fixed by the trustee at $4,118.75. I am unable to quite appreciate on what theory the trustee could reduce the trust fund to the amount stated. The plain provision of the will was that $4,500 should be set apart if the house and lot were sold, regardless of what might be realized on the sale, and, while the trustee seems to have regarded the trust fund to be $4,118.75, and while Louisa appears to have acquiesced

therein, if this was really a trust fund and there were remaindermen, including infants, who might ultimately receive some portion, neither the act of the trustee nor the consent of the life tenant to a diminution of the corpus of the estate could bind such remaindermen; and I very seriously doubt if, in the absence of any consideration paid to her, Louisa, by her acquiescence, so acted as to reduce the corpus of such estate as to her. No segregation of the trust fund appears to have been made by the trustee, and, with the exception of one bond of the Reading Railroad Company and one of the Louisville & Nashville Railroad Company, of $1,000 each, no investment of the trust funds was made.

The trustee wrongfully and in utter disregard of his duty mingled the trust fund with his own money and used the same, paying the beneficiary interest thereon, subject to his commissions and expenses, and it was conceded on the trial that there remained in his hands at his death of this trust fund $2,118.75, besides some unpaid interest. The impropriety of Olin serving as trustee at all is at once apparent when we consider the fact that he was withholding the trust estate from the beneficiary, to whom it had been absolutely bequeathed, with the condition of Louisa being childless and the likelihood of her dying without descendants, and thereby, under the construction he was evidently giving the will, he would ultimately receive one-half of the trust estate. I do not think such was the "wisdom" referred to by the testatrix when she provided for his temporarily withholding control of the property given to Louisa.

It seems to me, as I have suggested, if the provisions of said clause subsequent to the absolute gift have any coherency at all, that Olin's discretion was not as to whether the property should go to Louisa, but rather as to how long she was, for her own welfare and protection, to be deprived of it. That was a purely personal discretion, reposed in the son by the confiding mother, and did not pass to the substituted trustee. S. Olin Foster having died, no one is left who can longer deprive the beneficiary of her absolute estate under the will, or exercise the restraint that the testatrix evidently intended to provide.

Then, again, the final provision in this second clause, dividing the trust estate in case Louisa should die without leaving descendants, taken with the previous provisions, is most ambiguous and uncertain. It is quite impossible to construe this final provision as giving Louisa a life estate and the remainder to her descendants in case she should die leaving descendants, for in that event there is no word or syllable to be found in the will making a gift over to such descendants. The only reference to the descendants of Louisa is found in this provision giving the property to Olin and Mrs. Evans and children in the event of Louisa dying without descendants. So far as any provision of the will is concerned, the testatrix would either have died intestate as to such remainder in the event of Louisa dying leaving descendants, or the estate would have vested in Louisa on the latter's death, and in the latter event the descendants of Louisa would not take by purchase, but through their mother, in the event of her death intes-

tate. It is entirely clear that the remaindermen mentioned in the clause would not take any part of the remainder if Louisa should die leaving descendants.

In my opinion, the primary wish of the testatrix was to provide for her granddaughter Louisa by giving her the property mentioned, and that by any subsequent language which she used after the first plain provision she did not intend to destroy her main object, but rather to insure its fulfillment.

[3] It is true, on their face, the words used seem to limit the absolute gift; but at best they are vague and uncertain, and under well-settled principles of construction, where there is a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity, the estate thus given will not be cut down or lessened by subsequent words, which are ambiguous or of a doubtful meaning. Benson et al. v. Corbin et al., 145 N. Y. 351, 40 N. E. 11.

And again, in order to give effect to what the testatrix really intended, as reflected by her testamentary provisions, in making the apparent gift over to the son, S. Olin Foster, and to Abbie Evans and her children, in the event of Louisa dying without descendants, the testatrix referred to death without descendants in the lifetime of testatrix.

[4] The law is well settled that where, in a will, there is an absolute gift in terms denoting the intention that the subject of the testator's bounty should take the same absolutely on the death of the testator, and there follows a gift over in case of the death of the beneficiary without issue, that the words refer to death without issue prior to the testator's death, and that the beneficiary, surviving the testator, takes absolutely. Vanderzee v. Slingerland, 103 N. Y. 55, 8 N. E. 247, 57 Am. Rep. 701; Washbon v. Cope, 144 N. Y. 297, 39 N. E. 388.

To recapitulate, it seems to me that, under the will of Sylvia Foster, deceased, Louisa F. Hammond, now Louisa H. Shurtleff, took the fee of the house and lot in Turin, subject to the control thereof by S. Olin Foster, named as executor and trustee, during the minority of said Louisa, and that said executor and trustee was invested with authority to temporarily withhold the corpus of the estate from the owner, but that such authority and discretion was not intended to be arbitrarily exercised, and that, under the proofs in the case, showing the advantageous marriage and domestic settlement of Louisa and her habits of industry, with all of which the trustee had been entirely familiar for many years, he wrongfully withheld said fund from the true owner, and failed and neglected to carry out the imperative direction of his mother's will, and that, in any event, with the death of said executor and trustee all discretion to deprive the beneficiary of her estate under the will ended. More than a mere discretionary power is given to the trustee by the words of the testatrix. She says:

"But I *direct my executor* and trustee hereinafter named to *hold* the property herein given to Louisa *until* in his wisdom he shall think it advisable and proper to pay over and transfer the same to her."

Here is more than a mere power. It is an imperative command: "I direct." The executor is merely *"to hold* the property *until"* in his wisdom, etc., he shall turn it over.

The direction is mandatory, and the only discretion given was as to when the direction should be carried out. The case of Smith et al. v. Floyd, 140 N. Y. 337, 35 N. E. 606, is quite in point, and the clear and logical argument of Judge Maynard in the opinion in that case is applicable here. It seems to me that equity must regard as done that which the trustee should have done.

I therefore am of the opinion that it is the imperative duty of the substituted representative of the estate of Sylvia Foster, deceased, to secure from the estate of S. Olin Foster sufficient to make up, together with such trust funds as he now has in his hands, the fund provided in said will, together with all arrearage of interest thereon, and pay and turn over the same to said Louisa H. Shurtleff.

[5] The plaintiff also asks the instruction of the court as to whether, under the third clause of said will, he has any power of sale of the two parcels of real estate mentioned in said item. The third clause of said will reads as follows:

"Third: The house and lot in Turin village and a lot of ten acres, the use of which my said granddaughter Abbie Evans now has, I give, devise and bequeath to said Abbie during her lifetime, and at her decease I give and bequeath the same to her descendants. And if I shall have sold the said house and lot, or said ten acres, during my life, I give and bequeath the avails of such portion thereof as may be sold to my executor and trustee named herein; in trust nevertheless, to receive the interest, income and profit therefrom and pay over the same annually to said Abbie, and at her decease to pay the same to her descendants. I also give to said Abbie the income and dividends on two thousand dollars of Gas Stock, New York City, now held by me, during her life; and at her death I give and bequeath the same to her descendants. And in case the said $2,000 of gas stock shall be sold and converted into money, said Abbie shall have the interest and income from the avails, in lieu of such stock. Said income and dividends, or interest to be paid over by said trustee annually, and at the death of said Abbie, the stock or avails to be transferred and paid over to her descendants. And in case she dies without children or descendants, the property mentioned in this third item to revert and go to the heirs then living of said Abbie."

By the fifth clause of said will testatrix appoints her—

"said son, S. Olin, the trustee of and concerning the moneys and property made the subject of trusts in the foregoing second and third items. * * *"

By the sixth clause testatrix empowers her said executor—

"to sell and convey my said real estate; and in case of the sale thereof, the avails shall stand in the place of such real estate, and be treated accordingly."

By these provisions, it seems to me, the two parcels of real estate mentioned in the third clause went to the granddaughter, Abbie Evans, for life, with the remainder over to her descendants in fee, subject to being divested by the executor by a sale under the power conferred by the will.

[6] This power, however, under the will as a whole, and considering the relations of the parties, was a purely personal one, and did

not survive S. Olin Foster. It appears that the property has always been occupied by said Abbie Evans and children as a home, and I do not think that the plaintiff can now interfere therewith.