**IRONS et al. v. FORT WORTH SAND & GRAVEL CO., Inc., et al.**

No. 15443.

Court of Civil Appeals of Texas.
Fort Worth.

June 19, 1953.

Rehearing Denied Sept. 18, 1953.

630

J. C. Mount, Fort Worth, for appellants.

R. T. Churchill, and Thompson, Walker, Smith & Shannon, Fort Worth, for appellees.

BOYD, Justice.

By provisions of his will, G. P. Reves devised to his eight children and one grandchild, in severalty, definitely described tracts of land, but reserved in the devisees all oil, gas, sand, gravel and mineral rights, "share and share alike." The testator died May 9, 1949, and the will was admitted to probate May 23, 1949.

This suit was brought by appellant Ova Lee Irons, a daughter of the testator and one of the devisees under the will, joined by her husband, Vern T. Irons, against Fort Worth Sand & Gravel Company, Inc., Thomas Gravel Company, Inc., and M. G. Reves and E. J. Reves, independent executors of the estate of G. P. Reves, to recover damages for the removal and conversion of sand and gravel from the devised lands, and for an accounting. Appellees Fort Worth Sand & Gravel Company and Thomas Gravel Company filed motions for summary judgment, which were sustained. They asserted a right to remove the sand and gravel by virtue of a lease which had been executed on May 2, 1950, by the executors and all the devisees named in the will of G. P. Reves, except Mrs. Irons, in favor of Fort Worth Sand & Gravel Company, which lease was subsequently assigned to Thomas Gravel Company. The trial court held that there existed no genuine issue of material fact, and that as a matter of law appellants were not entitled to recover against the appellees. The cause of action alleged against the executors was severed and the court retained jurisdiction over that cause.

The appeal involves the question of the implied power of sale in the executors, and involves the construction of paragraph twelve of the will, reading as follows:

"12. It is my intention, will and desire that all gas, oil and mineral rights, also including the production of sand, gravel and ore of all kinds, inure to the benefit of all my children and my said grandchild hereinabove mentioned alike, and that the profits from same be divided equally among them share and share alike, and such oil, gas, sand, gravel and mineral rights are hereby reserved in them share and share alike, and in order to make an equitable settlement with the devisee or devisees on whose land or under which the same is hereinabove divided, it is my will and desire that the one or ones so damaged, be paid a fair and reasonable price for such lands out of the royalties therefrom, the price and damages thereof to be determined by the Executors hereinafter named."

The court held, in effect, that the executors had the implied power to make a sand and gravel lease, and the appeal challenges the correctness of such holding.

A mineral lease is a sale of an interest in realty. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989; Martin v. Dial, Tex. Com.App., 57 S.W.2d 75, 89 A.L.R. 571;

Avis v. First Nat. Bank of Wichita Falls, 141 Tex. 489, 174 S.W.2d 255.

In the construction of a will, the intention of the testator must control. It is the duty of the courts to ascertain that intention and to give it effect, if the purpose intended be not unlawful or contrary to public policy. Every sentence, clause and word must be considered in construing a will and, if possible, effect must be given to all its provisions. It will be presumed that the testator placed nothing meaningless or superfluous in it. Lockett v. Wood, Tex.Civ.App., 84 S.W.2d 798; Norton v. Jones, Tex.Civ.App., 210 S.W.2d 820, writ refused.

It seems to be settled that an executor's power to sell real estate need not be expressly given by the will, but may be implied when it is clear that the testator intended that his executor should have such power, or the directions of the will are such that the power of sale is necessary in order that they may be properly carried out. But the courts may not put a strained construction on its language in order to extract such a power from a will when it is not clear that there was the intention to give or a necessity for such power. 33 C.J. S., Executors and Administrators, § 275, page 1294. And the intention to give a power of sale must be gathered from a reasonable construction of the whole instrument. 3 Schouler on Wills, Executors and Administrators, p. 2214, sec. 2418.

"Where a testator imposes upon his executor trusts to be executed or duties to be performed which cannot be executed or performed without a power of sale, although no power is expressly given by the will, the executor may take by implication a power of sale sufficient to enable him to execute the trusts or perform the duties imposed upon him." 11 R.C.L., p. 398, sec. 480. The criterion for determining whether an executor is invested with a power of sale by implication, where the will directs that land be sold and the proceeds applied to the payments of debts, is whether the fund arising from the sale is distributable by him. The mere appointment of an executor of a will that directs a sale of land does not of itself confer on him the power

to sell. It is only where the will directs him or the law binds him to see to the application of the proceeds that he becomes invested with the power of sale. 87 Am. Dec. p. 212, et seq.; Lippincott's Ex'r v. Lippincott, 19 N.J.Eq. 121. If the land directed to be sold is devised, this is regarded as evidence of the intention of the testator that the fund is not to be distributed by the executor, and the power of sale vests in the devisee. 11 R.C.L., p. 399, sec. 482, and authorities there cited.

In our case the children were to take the minerals, not the proceeds from the sale of minerals. Without a clear implication arising from the terms of the will, we are constrained to conclude that the executors are without power to change the nature of the testator's property before it reaches the objects of his bounty. The will provided that "such oil, gas, sand, gravel and mineral rights are hereby reserved in them share and share alike." The minerals were not devised to the executors in trust, with power to handle and dispose of them and the duty to account for the proceeds of their sale. The executors were not directed to agree on the terms of any sale, to collect any royalty, or pay any damages resulting from exploration and development. Their only duty in the premises is to determine the damages suffered by the owner of the surface from mining operations.

The only duty of the executors being to determine the damages to the surface owners caused by mining operations, the question therefore is, can a power in the executors to sell be implied when the property to be sold has been devised in fee, and when the revenue from such sale is not required to pay any debt or any legacy, and is not to be distributed by the executors? Appellees argue that the power to sell the sand and gravel must be implied since it is the duty of the executors to determine the damage caused by any excavation therefor, and it became their duty "to find some way to fix the damage," and they were "vested with discretion as to the manner and way that should be employed by them in determining the damage," and "the safest, surest and most satisfactory method of determin-

ing would be the development thereof," and they "deemed it to be their duty to move with promptness," and they set out "with reasonable dispatch to perform their duty of ascertaining the damage to which either was entitled." This position is almost, if not quite, the same as saying that the executors have the implied power to sell minerals in order to occasion damage to the surface of lands in order to determine such damage.

By a holding that does not enlarge the authority of the executors but limits their power, as we think it was limited by the will, only to determine the amount of damages occasioned by mining operations, effect is given to every provision of the will, those relating to ownership in the devisees, which undoubtedly was given them by the testator, as well as those relating to the authority of the executors.

█ There is another consideration which compels the conclusion we have indicated. It is the rule that courts will not, without strong and decisive reasons, construe subsequent provisions of a will to lessen the estate theretofore devised. In Benson v. Corbin, 145 N.Y. 351, 40 N.E. 11, 12, it is said: " * * * where there is primarily a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity, the estate thus given will not be cut down or lessened by subsequent words which are ambiguous or of doubtful meaning. * * * the circumstance or the reason must be strong and decisive where the construction collides with a plain devise in fee, and forces a change of its terms by cutting it down to a lesser estate. We do not easily trade a certainty for a doubt." See also Hart v. Shurtleff, 76 Misc. 615, 137 N.Y.S. 249. We find no such clear implication as would, in our opinion, justify a holding that would lessen the estate in the devisees and enhance the power of the executors.

There is yet another circumstance which supports the view here expressed. Owners, themselves, may sell mining leases. In the ordinary course of events, an independent executorship of an estate owing no debts will not continue forever. On the other hand, the last mineral exploration and de-

velopment on the lands devised by this testator may be made in the next generation, or the next century, or the next age. We cannot say that all the provisions of the will, taken together and with effect given to each, compel the conclusion that the testator intended to grant to arbitrators or referees the power to deprive the owners of the right to as full enjoyment of their estates as their ancestor gave them in words that are unambiguous and plain.

The judgment is reversed and the cause remanded.