*Robert McMillan* and *H. H. Dean,* for defendant.

---

BURNEY v. ARNOLD.

1. Under the pleadings and agreed statement of facts, the plaintiff and the defendant were bound by the terms of the deed as far as concerns an adjudication in this case of questions affecting their interests in the land in controversy.

2. Where a deed conveyed property "to be and remain the sole and separate property of said Fannie C. [the wife of the grantor] and for her sole and separate use during her lifetime, and at her death to go to and vest in such child or children as are born or may be born of said marriage," a life-estate was created in the wife, with a vested remainder in the children of the grantor and his wife who were in life at the time the deed was executed, with the remainder estate to open and let in to a vested remainder such children as might thereafter be born of the marriage.

3. The owner of an undivided interest in land may maintain against his cotenant in adverse possession of the entire property an action of ejectment and for the recovery of mesne profits. If a recovery is had, the plaintiff will be put in possession with the defendant as a tenant in common.

FEBRUARY 25, 1910.

Complaint for land.   Before Judge Lewis.   Morgan superior court.   September 7, 1908.

On June 6, 1855, shortly prior to their marriage, John. W. Burney and Fannie. C. Walker, residents of Morgan County, Ga., executed an agreement reciting as follows: "Whereas marriage is contemplated shortly to be solemnized between said John. W. and Fannie C., and whereas the said John. W. Burney is desirous of protecting the said Fannie C. against the pecuniary misfortunes

of life. Now the said John W., for and in consideration of the said contemplated marriage, hath released and relinquished and doth by these presents release and relinquish his marital right in and to that portion of the separate estate of said Fannie C. hereinafter named—the same to be and remain the sole and separate property of said Fannie C. and for sole and separate use during her lifetime and at her death to go and vest in such child or children as may be born of said marriage, to wit:" (Here follows a description of certain slaves.) "Together with the sum of five thousand dollars in money to be invested at the earliest convenience of said John W. in such stocks as he and the said Fannie C. may agree upon. And it is further agreed by and between the said parties that any of said negroes named or their increase may by the joint act of John W. and Fannie C. be sold or exchanged, but the nature of the title of whatever may be received upon such sale or exchange shall in no wise be changed thereby, but follow the original estate. And it is further stipulated and agreed by and between the parties that after the consummation of said contemplated marriage the said John W. Burney shall act as trustee for said Fannie C. touching said negro property and said money and stock as aforesaid." On January 19, 1876, John W. Burney executed to himself as trustee for his wife a deed, which, omitting formal parts and the description of the property conveyed, is as follows: "Whereas John W. Burney and his wife, then Fannie C. Walker, in contemplation of marriage did on the 6th day of June in the year eighteen hundred and fifty-five, make and enter into a marriage contract in writing which is now referred to as being recorded in the clerk's office of the superior court of said county of Morgan in Land Book "L," Folio 49, on the 7 day of June, 1855, and by the terms of which certain slaves therein named, together with the sum of five thousand dollars, of the property of the said F. C. Walker, the said five thousand dollars to be invested in stocks, was settled to be and remain the sole and separate property of the said Fannie C. during her lifetime and at her death to go and vest in such child or children as may be born of said marriage, and the said John W. Burney made Trustee for said Fannie C. touching said negro property and stocks. And whereas the said John W. Burney shortly after the consummation of said marriage did receive into his possession of the property of said Fannie C. the said sum

of five thousand dollars and did use the same for his individual purposes, believing that he would be able to restore the same with interest thereon at any time. And whereas, by reason of the results of the late war between the States and other unforeseen causes, the said John W. Burney finds himself unable to comply with the letter of the said contract, and being anxious to account for the said five thousand dollars with interest thereon, as far as he may be able to do, makes the following conveyance as the best he can now do in discharge of the obligations imposed on him in said marriage contract, viz.: This Indenture made and entered into this the nineteenth day of January, 1876, between John W. Burney of said county and State, and John W. Burney, trustee for his wife Fannie C. Burney, formerly Fannie C. Walker, Witnesses that the said John W. Burney, for and in consideration of the facts stated in the foregoing and above recitals and his obligations contained in the said marriage contract above referred to, and in discharge of said obligation to the extent of eight thousand dollars, the value put upon the property hereinafter described, does hereby sell and convey unto himself as trustee of said Fannie C. Burney a certain tract of land [described]. To have and to hold all and every said described property to him as trustee for the said Fannie C. Burney, to be and remain the sole and separate property of said Fannie C. and for her sole and separate use during her lifetime and at her death to go to and vest in such child or children as are born or may be born of said marriage. And the title to the said described property unto the said John W. Burney, trustee as aforesaid, for the purposes aforesaid, the said John W. Burney does and will forever warrant against the claims of all and every person whomsoever."

The plaintiff in the present action is the husband of one of six children born to the above-named parties, and as sole heir of his wife seeks, according to the petition as amended, to recover an undivided one-fourth interest in property covered by the deed above mentioned, together with mesne profits thereof. The defendant, who is the only survivor of the six children, and the only one who survived his mother, Mrs. Fannie C. Burney, filed general and special demurrers and an answer. After allowance of an amendment offered by the plaintiff, the court, at the trial term, overruled the demurrers and proceeded to a hearing of the case without a jury, on an agreed statement of facts, and rendered judgment

awarding to the plaintiff a one-fourth interest in the property sued for, and mesne profits. To this judgment and that overruling the demurrers the defendant excepted.

It was agreed between the parties, that John W. Burney and Fannie C. Walker were married in June, 1855, and as husband and wife resided in Morgan county continuously thereafter until May 18, 1906, when she died; and that the marriage articles and the deed above referred to were duly recorded, and copies thereof were by consent received in evidence. The value of the mesne profits to be allowed in the event of a recovery by the plaintiff were also agreed upon. The other facts agreed upon, necessary to an understanding of the decision rendered, are as follows: "That as a result of said marriage there were born to the said John W. and said Fannie C. the following children, to wit: Alexander, born March 6th, 1856, and died March 25th, 1856; Thomas, born March 21st, 1857, died March 25, 1857; John T., born July 21st, 1858, died March 31st, 1895; William A., the defendant, born April 26, 1861, and now living; Crawford R., born March 25th, 1864, died March 21st, 1897; Julia C., born Sept. 30th, 1868, died June 30th, 1899. It is further agreed that at the time of his death Crawford R. left surviving him both a wife and one child, who are now in life and who reside in Alabama and who are his sole heirs at law; it is not known whether or not he died testate or intestate; it is not known whether or not there was any administration upon his estate; it is not known whether or not, at the time of his death he owed any debts for which his estate can be held liable; but it is agreed that on the 17th day of August, 1891, Crawford R. Burney executed and delivered to a copartnership, using the firm name of L. Cohen & Co., a certain instrument in writing, recorded in Book K, page 563, in the office of the clerk of the superior court of Morgan county. It is further agreed that the original of this paper is not in the possession, custody, or control of either of the parties to the case at bar, and that the record of this paper, or a correct copy thereof, at the election of either of the parties, may be read in evidence at the trial of said case in lieu of the original; provided always the original would be competent evidence upon the trial of the issues of the case at bar." It is agreed that Julia C. Burney intermarried with the plaintiff on the 10th day of March, 1897; that she died intestate owing no debts; that there has been no ad-

ministration upon her estate; that she left surviving her, as her sole heir at law, Wood Arnold, the plaintiff. The issue of said marriage was one son, who died before his mother. It is further agreed, that Fannie C. Burney, formerly Fannie C. Walker, died intestate on the 18th day of May, 1906; that on the——day of —————————, 1906, William A. Burney was appointed administrator upon the estate of Fannie C. Burney by the ordinary of Morgan county, Ga., and that immediately thereafter William A. Burney qualified as such administrator, and that he has never been discharged from said trust as such administrator. It is further agreed that there has been no administration upon the respective estates of Alexander and Thomas Burney, the children of John W. Burney and Fannie C. Burney, formerly Fannie C. Walker; and none on estate of deceased son of said Julia C. by her husband, Wood Arnold, said son leaving no estate. It is agreed that John W. Burney acquired title to the land described in the petition in this wise: he inherited a one-half undivided interest therein; he purchased from his brother a one-half undivided interest therein, paying his brother therefor part of the money that went into his hands under and by virtue of the marriage articles hereinbefore referred to between John W. Burney and Fannie C. Burney, formerly Walker."

*F. C. Foster* and *J. D. Kilpatrick,* for plaintiff in error.

*George & Anderson,* contra.

HOLDEN, J. (After stating the facts.)

1. One of the questions to be decided in this case is whether the rights of the parties are governed by the terms of the antenuptial contract, or by the provisions of the deed. The contract expressed in the antenuptial agreement was executory. John W. Burney was to become the trustee of his wife after the consummation of their marriage. The deed, which does not acknowledge the receipt by him of any property referred to in the antenuptial agreement, except the $5,000 in money, states that he "did use the same for his individual purposes," and further recites that he, being "unable to comply with the letter of said contract [the antenuptial agreement], and being anxious to account for the said $5,000 with interest thereon as far as he may be able to do so, makes the following conveyance as the best he can now do in discharge of the obligations imposed on him in said marriage contract." There is no

10

doubt that for the purposes of this case the rights of the parties are to be governed by the deed alone, the marriage contract having no other effect than that it may be referred to for the purpose of making clear any matter of doubt in construing the deed, the latter referring to the marriage contract as an inducement to the making of the deed. The plaintiff sues to recover an undivided one-fourth interest in the property conveyed by the deed, making it the foundation of his abstract of title, and nowhere in his pleadings making any reference to the marriage articles. He makes no contention that he is entitled to the property under the antenuptial contract, or by reason of any of the trust property referred to therein going into the property which the deed conveys. The defendant in his answer states that there went into the hands of John W. Burney, under the marriage contract, $5,000 in money and property of the value of $10,000, and that he, "being a man of means at that time amply able to respond, used said property and money for his own purposes in good faith, intending to repay the same at such time as he might be required to account under said marriage contract." The answer further states that in an effort to replace the funds he made the deed. The allegations of the plaintiff that John W. Burney used the property and money referred to in the marriage contract "for his own purposes," and that in making the deed he was making an effort to replace the funds that he had spent, show that the defendant is not claiming the property conveyed by the deed, or any interest therein, because of any of the property or money referred to in the marriage contract going into the same. On the other hand, he states that Burney used this property and money for his own purposes, and that in making the deed he was undertaking to replace the same. Moreover, the agreed statement of facts shows that the defendant, as the sole surviving child of the life-tenant, is claiming all of the property conveyed by the deed, and that only an undivided one-half interest thereof was purchased with funds which passed under the antenuptial contract. The defendant claiming the entire interest under the deed is bound by its recitals, and can only take whatever interest in the land he is entitled to thereunder. Burney conveyed not only the one-half interest in the land purchased, according to the agreed statement of facts, with trust funds, but conveyed the other undivided one-half interest which he inherited. The defendant claims the entire

property.    He can not claim the whole of it because of trust funds going into it, for the reason that such funds purchased only an undivided one-half interest.    The defendant can not accept the deed in part and reject it in part; and as he claims the whole property it conveyed, he is bound by the deed in toto.

2.    Having ascertained that the rights of the parties are controlled by the deed, let us now determine the character of the remainder estate conveyed by it.    The deed, after creating a precedent life-estate in Fannie C. Burney, disposed of the remainder interest in these words: "at her death to go to and vest in such child or children as are born or may be born of said marriage." The agreed statement of facts shows that four children of the grantor and the life-tenant were in life at the time of the execution of the deed, and that none were born to them thereafter. There is no uncertainty as to who constituted the remaindermen under the deed—the question is whether they took thereby a vested or a contingent remainder.    The words above quoted are the only language in the deed whereby any disposition of, or reference to, any remainder estate is made.    The general rule is that when the right of possession of the expectant estate would immediately devolve on the one entitled to the remainder in the event of a determination of the precedent estate, an instrument will be held to create a vested remainder in interest, with the right of possession postponed, unless it appears that the grantor intended otherwise; and this rule is supplemented by a further one that in all cases of doubt as to the intent of the creator of the estate, the law will resolve that doubt in favor of the vesting of the remainder.    Thus words relating to time, such as "when," "then," "after," "from," etc., in the devise of a remainder after a present estate, determinable on an event which must necessarily happen, are construed to relate merely to the time of enjoyment of the estate, and not to the time of the vesting in interest.    24 Am. & Eng. Enc. Law, 395.  Applying the above rules of construction to the present case, it would be clear that if the words used were "at her death to go," without the addition of the words "and vest in," the effect would be to create a vested remainder.    Counsel in the present case insists, however, that, there being no remainder created in the deed except by the words "at her death to go and vest in," etc., the use of the additional words "and vest in," must necessarily have been employed

to convey some meaning, and since the words "to go" are sufficient to indicate the idea of carrying the possession, the words "and vest in" must be construed as expressing an intention of the grantor that there should be no vesting in interest until the death of the life-tenant. While this argument is a plausible one, in arriving at the intent of the grantor it must be borne in mind that the word "vest" has a double meaning; it is employed to denote either "a vesting in interest," or "a vesting in possession." If employed by the grantor in the latter ·sense, it would have no further effect than if the grantor had declared that the property at the death of the life-tenant was "to go to and be possessed by" the remaindermen. As early as *McGinnis* v. *Foster,* 4 *Ga.* 377, 382, this court, in determining whether a contingent or a vested remainder was created by an instrument, applied the rule that if it was "susceptible of two constructions, the one favorable to vested and unfavorable to contingent remainders should be adopted." This rule has been given effect in many subsequent decisions of our court, and is now embodied in the code. *Fields* v. *Lewis,* 118 *Ga.* 573 (45 S. E. 437), and cit.; Civil Code, § 3104. We find no decision in Georgia in which the words construed were identical, or even closely similar, to those used in the deed we are now construing; but following the rule above mentioned as governing in cases where the intention of the grantor is not so expressed as to be free from doubt, not being able to say that the grantor in the deed under consideration did not intend to employ the word "vest" as meaning a vesting in possession, we construe the deed as creating at the time of its execution a vested remainder in such children of John W. Burney and Fannie C. Burney as were then in life, subject to open up and let in to a vested-remainder interest children thereafter born to them. This decision is reached from applying the rules of construction laid down by our own court; but we cite in conclusion the case of Shepard *v.* Shepard, 2 Misc. 556 (24 N. Y. Supp. 773). In that case the language construed was that providing a disposition of the property after the death of a life-tenant, in the words, "to revert to and vest in the heirs of said [grantor]." By other provisions of the trust deed construed in that case, the life-tenancy was created to begin upon the death of the grantor. It was held that upon the death of grantor, leaving the life-tenant in life, the beneficiaries in remainder took, under the above-quoted

language of the deed, a vested-remainder interest in the property conveyed, with a right of alienation.

3. The defendant in the court below insists that one cotenant can not bring an action of ejectment against another cotenant, or recover mesne profits in such a suit if it can be maintained. In the case of *Logan* v. *Goodall*, 42 *Ga.* 95, it was held: "One tenant in common may bring ejectment against his cotenant, if the possession of the cotenant be adverse; if a recovery is had, the plaintiff will be put in possession as a tenant in common, leaving to the parties the right, by writ of partition or bill in equity, to settle any equities there may be between them as tenants in common." We have been asked to overrule this decision, but upon a careful consideration thereof we decline to do so. The record shows that the defendant was in adverse possession of the entire property for which suit was brought, claiming the fee to the whole, and denying that the plaintiff had any interest therein or the right of possession of any part thereof.

There was no error in overruling the demurrers. From the agreed statement of facts it appears that it was agreed between the parties that if any judgment for mesne profits was rendered, the amount of the same for 1908 was to be reduced by the amount of taxes on the property for that year. It seems that the court overlooked this fact in rendering judgment; and direction is given that the judgment be modified so as to provide that the amount of mesne profits for the year 1908 for which judgment was rendered be reduced by one fourth of the taxes on the whole property for that year.

*Judgment affirmed, with direction.　　All the Justices concur.*