[Civ. No. 2948.   Fourth Dist.   Dec. 2, 1941.]

MRS. THOMAS B. RANDALL, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., Appellant.

250

John A. Hadaller for Appellant.

Elliott H. Pentz for Respondent.

WEST, J. *pro tem.*—This is an appeal by defendant, as executor of the last will and testament of George Ward, deceased, from a judgment decreeing that plaintiff is the owner of a full paid investment certificate evidencing money on deposit in a building and loan association, and adjudging that defendant has no interest therein. The following is a summary of the facts. On October 24, 1935, George Ward invested $2,300 in cash in a full paid investment certificate of Southern California Building and Loan Association which certificate was issued in the names of ''George Ward or Thomas B. Randall under a trust agreement.'' The trust agreement was executed on a separate paper in the following form:

''SOUTHERN CALIFORNIA BUILDING
AND LOAN ASSOCIATION

''Los Angeles, California.
''Dated October 24th, 1935.

''With reference to the Within Full Paid Inv. certificate No. 10022 standing in the name of GEORGE WARD, it is understood to be in trust for hisself, during his lifetime with full power of revocation and substitution, by surrender

and cancellation of this certificate. And on his death, all unpaid principal and interest, shall vest in THOMAS B. RANDALL.

"Subject to the provisions of all laws then in force.
                    "Signed X George Ward (G. W.)
                    "Witness W. L. Worwald"

Ward was the great-uncle of Randall. The transaction was consummated without the knowledge of Randall. No change was made in either the certificate or the declaration during the lifetimes of either Randall or Ward. Randall died September 25, 1938, and Ward died March 25, 1939. The investment certificate remained at all times after its issuance in Ward's possession, and after his death came into the hands of the defendant executor, together with the remainder of Ward's assets. All of these facts were stipulated. It also appears from the record that after Ward's death plaintiff, who is the surviving wife of Randall, procured an order from the probate court setting the certificate aside to her as the only asset of her husband's estate, and pursuant to the provisions of section 645 of the Probate Code. Thereafter, plaintiff instituted this action against the defendant in its capacity as executor to quiet her title to said certificate. Findings were waived by stipulation, and were unnecessary in view of the agreed statement of facts, and the judgment does not specifically indicate the theory upon which the judgment for plaintiff was based.

The appellant attacks the judgment contending that there was in Randall's lifetime no completed gift to him in that there was no actual or symbolical delivery of the certificate or the funds represented thereby, on the further ground that the declaration was ineffectual as a testamentary disposition, and finally that the declaration did not constitute a valid trust. It may be noted also that one other point is made which will require consideration, *viz.*, that since Randall predeceased Ward, no present vested interest in the property which was the subject of the declaration passed to Randall and therefore that there was no vested remainder to descend to respondent from her husband.

It is unnecessary to accord any great consideration to the questions which might arise as to the effectiveness of the declaration either as a gift *inter vivos* or as a testamentary

attempt. Respondent does not contend that the judgment could have been properly predicated on either theory. She does assert that a valid trust was created by Ward in the execution of the document hereinbefore quoted, and that a vested remainder was thereby established in Randall which passed to respondent as his surviving wife and heir at law. She further contends that even if Randall's status was merely that of a holder of a contingent remainder, such interest descended to her upon her husband's death.

█ Appellant's contention with regard to the trust theory is that Ward, by his declaration, constituted himself trustor, trustee and beneficiary, and that the only interpretation to be given to the instrument is that he was merely transferring his money from one pocket to another which would not be consistent with either a valid declaration of trust on the one hand or the acceptance of the trust by himself as trustee on the other, and that therefore the status assumed by Ward in making his declaration was that of a mere depositor of money with himself for his own benefit and for the benefit of no other person during his lifetime. If such contention is correct, the document is nothing more than an abortive attempt to make a will. But it seems clear from the reading of the document executed by Ward, as well as from the circumstances surrounding the whole transaction, that a trust was intended to be created. It is true that in determining the intention of the depositor this court must look to the instrument alone and gather the purpose from the scope of its declaration. (*Title Insurance & Trust Co.* v. *Duffill,* 191 Cal. 629 [218 Pac. 14].) In that case it was held that the trustor's intention must be taken from what he said rather than from what he intended to say. This must be recognized as a sound principle, but in the interpretation of the trustor's language the words "in trust for hisself" must be read in the light of the entire declaration and not of the quoted phrase as an isolated statement of intention. His reservation of the right to revoke in whole or in part or to substitute by appealing to the association for cancellation of the certificate, taken with the direction that upon his death the unpaid amounts should vest in Randall, cannot be ignored as meaningless.

█ The confusion here may be largely eliminated by a consideration of the true status created by the declaration.

We think the trial court was justified in construing that Ward intended to constitute the building and loan association as trustee and himself and his nephew Randall as beneficiaries, Randall's right of enjoyment, however, to be postponed until after the death of Ward. Thus measured, the rule laid down in *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19 [54 Pac. 370], applies. In that case the order to the depositary was as follows: "To Oakland Bank of Savings, May 17, 1893. *In re* savings deposit 7041, in my name. Pay to the individual order of either Cornelia E. Booth or Aurelia L. James, or myself. Signed, Frances A. Bell." It appeared in the Booth case that the depositor did not intend that anyone should have the right to withdraw any portion of the deposited funds during her lifetime except herself. She wrote a letter in which she stated that no one could draw the money without an order from her. Again in *Sprague* v. *Walton,* 145 Cal. 228, the depositor addressed the bank where the fund was deposited authorizing the withdrawal of funds by his wife and stating that she should have the right of survivorship. There appeared some question as to whether it was the intention of the depositor that his wife should draw out the deposits or change them to her own account during the husband's lifetime, but the Supreme Court held that the declaration was consistent with the creation of a valid trust.

We have found no case abrogating the rule established that where one deposits money in his own name and that of another jointly with the intention of enabling the other party to draw money after the death of the depositor a valid trust is created in favor of the other person as beneficiary, and the validity of such trust is not negatived because the depositor retains power to withdraw the deposit during his lifetime or because he retains possession of the bank book at all times until his death. It is of course true that in both the Booth and Sprague cases the intention to vest a present interest in the beneficiary is more patent than in the instant case in view of the express direction that payment should be made to the order of either the settlor or the beneficiaries, while Ward made it clear that Randall's enjoyment of the fund should in all events be postponed until after Ward's death. But it seems clear that the creation of a valid trust is not at all dependent upon the present right to enjoy benefi-

cially if there is a present vesting in the beneficiary of some interest in the property which is the subject of the trust.

Sections 2221 and 2222 of the Civil Code define the method by which a valid trust may be created. If there is (1) an intention on the part of the settlor to create a trust and if (2) the subject of it, the purpose for which it is created, and the beneficiaries are indicated with reasonable certainty, and if (3) the trustee accepts the trust, the elements are complete. It is our opinion that the trial court had before it in the agreed statement of facts ample evidence to sustain the finding as to the existence of each of these elements. The issuance of the certificate under the hand and seal of the building and loan association should be held to be sufficient acceptance of the trust, when taken with the fact, which we must assume to be true, that the declaration was delivered to and remained with the association.

It is well to allude again to the question of vesting, in the light of Ward's declaration that "on his (Ward's) death all unpaid principal and interest shall vest in Thomas B. Randall." It is not inconsistent with a present transfer of interest that the words "shall vest" are used. In *Kinney's Estate* v. *Commissioner of Internal Revenue*, 80 Fed. (2d) 568, the trust instrument provided that "Upon the termination of this trust . . . the title to the whole of said property, so held in trust, shall immediately vest in the above named beneficiaries by title absolute. . . . " One of the beneficiaries died before the termination of the trust and the question arose whether her beneficial interest was taxable as an asset of her estate. The court determined that a present estate passed upon the creation of the trust and said:

"It is contended that the trustor intended the trust property to vest in the beneficiaries at the termination of the trust, and not before. 'But it is important to note the distinction between the interest transferred and the enjoyment of that interest. The enjoyment of the *cestui* may be made to commence in the future and to depend for its commencement upon the termination of an existing life or lives or of an intermediate estate.' (*Nichols* v. *Emery, supra,* 109 Cal. 323, at page 330, 41 P. 1089, 1091, 50 Am. St. Rep. 43.)

"Having in mind these rules and the California Code provisions, we are brought, after study of the declaration of trust, to the conclusion that the legal title to the remainder

vested at once in the beneficiaries, and that possession was to vest in them at the termination of the trust."

Without extending the discussion further as to the effect of the words "shall vest" we refer to *Gray* v. *Union Trust Co.*, 171 Cal. 637 [154 Pac. 306], *Miller* v. *Oliver*, 54 Cal. App. 495 [202 Pac. 168], and *In re De Vries*, 17 Cal. App. 184 [119 Pac. 109], supporting the existence of a vested remainder even though enjoyment is postponed and even though the power of revocation or substitution might divest the beneficiary at any time of the right to possession which otherwise would upon the trustor's death pass to him.

The trial court did not err in quieting respondent's title to the certificate. Upon the death of Ward the vested remainder interest of Randall passed to his wife as his sole heir, and her right to enforce the trust followed. (See *Sherman* v. *Hibernia Savings & Loan Society*, 129 Cal. App. (Supp.) 795 [20 Pac. (2d) 138].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.