Aramis REKDAHL et ux., Petitioners,

v.

James M. LONG et al., Respondents.

No. A–11790.

Supreme Court of Texas.

June 28, 1967.

Dissenting Opinion July 19, 1967.

Rehearing Denied July 19, 1967.

Kelley, Ryan & Merrill, C. O. Ryan and William J. Merrill, Houston, for petitioners.

Fulbright, Crooker, Freemàn, Bates & Jaworski, Chester M. Fulton, Houston, for respondents.

GRIFFIN, Justice.

This is a suit brought in the District Court of Brazoria County, Texas, by Aramis Rekdahl and his wife, as plaintiffs, against James M. Long, Trustee under the will of Mabel A. Rekdahl, mother of Aramis, and other beneficiaries under this trust, as defendants. The plaintiffs seek to have the provisions of the will establishing the trust declared void as being in violation of the rule against perpetuities set out in Section 26 of Article 1 of the Constitution of this State, Vernon's Ann.St. The cause was tried before the trial judge without a jury, and the trust provision was held to be valid. On appeal to a Court of Civil Appeals, the trial court's judgment was affirmed. 407 S.W.2d 339. We affirm the judgments of both courts below.

It is only Section III of Mabel Rekdahl's will that plaintiffs contend violates the rule against perpetuities. This section is set out in full in the Court of Civil Appeals opinion, and we will refer to the sections pertinent to our discussion.

This Section III is entitled "TEXAS TRUST." The first paragraph of this portion of the will provides:

"I give, bequeath and devise to my trustee hereinafter named all property whether real or personal or mixed which I die owning or in which I have any interest upon my death, which is located in or having a legal situs in the State of Texas in trust for the benefit of persons and as follows, to-wit: * * *."

This created an express trust with the legal title to the trust property in Defendant Long, as trustee, and the equitable or beneficial title in the "persons" enumerated in the succeeding paragraphs of Mrs. Rekdahl's will. Rust v. Rust (Tex.Civ.App., 1948), 211 S.W.2d 262, 266, approved by Sup.Ct., 147 Tex. 181, 214 S.W.2d 462 (1948); 57 Tex.Jur.2d 411 et seq. and authorities therein cited. The troublesome questions in this case are who are the beneficiaries and when does their title vest?

■ There are certain rules of construction governing our decision herein. The general rule is that the court should determine the intention of the testator from the language he used in the will. Kelly v. Womack, 153 Tex. 371, 268 S.W.2d 903, 906 (1954).

■ Another rule is that where an instrument is equally open to two constructions, one of which would make the provision valid and the other void, the one will be given which makes the will valid. Kelly v. Womack, supra; Neely v. Brogden (Tex.Com.App., 1922), 239 S.W. 192; 61 Tex.Jur.2d 264, § 143 and authorities cited.

Now, in the light of these rules, let us determine who are the "persons" beneficiary under the will of Mabel Rekdahl. The second paragraph of the will is styled "A" and provides in substance that the trustee shall have charge of all of her Texas property, manage the same and collect all income therefrom and pay all expenses, the expenses of administering the trust, and all other proper charges against the trust, and pay the income as follows: First, to pay Aramis Rekdahl $200.00 per month for his lifetime and with authority to increase this amount by adding further sums from the principal (corpus) or income of the trust; second, to pay to testatrix' sister, Mildred Manning, under certain conditions, from the income of the trust $100.00 per month during Mildred's life; third, to pay to Harold Rekdahl, testatrix' brother-in-law, from the income of the trust $50.00

per month during his life. The bequests to Mildred and Harold each are made cumulative so that in the event the income from the trust shall be insufficient to make any monthly payment, future excess income is to be used for the bequests. Next follow directions to the trustee, after payment of the above bequests, to accumulate from the trust income a fund of $25,000.00 to insure the payments from the income above set out to the named beneficiaries. There is established a second accumulation whereby the trustee is to accumulate $10,000.00 from the trust income to be paid in equal shares to her brothers and sisters and the brothers and sisters of her deceased husband, and this also may be used to pay medical expenses, etc., during the life of any or all of these beneficiaries.

There is a common provision in each of the first and second accumulations which states, " * * * provided, however, that if Aramis Rekdahl dies before I die, then such accumulation shall be made until twenty-one years after my death or until the entire trust hereunder terminates, whichever is sooner."

Paragraph 6 provides that payment of the balance of the net income after the foregoing bequests are paid shall be made to Aramis Rekdahl for his lifetime. Paragraph 7 provides what the trustee shall do with the payments to Aramis Rekdahl upon his death, or if he has predeceased testatrix, upon her death. One-fourth is to be paid to Aramis' widow, Violet, during her lifetime and the remaining 75% of the income paid in equal shares to "his [Aramis'] *children who survive him,*" and "if any child of Aramis Rekdahl dies leaving issue, then such issue shall take the share which his or her parent would have taken had he or she survived him." Upon Violet's death her share is to be paid to "the said children or issue of Aramis Rekdahl." Then follows a provision for payment of income to continue until "such child receiving hereunder is thirty-five years of age." As each such child successively becomes thirty-five years of age, he is to cease receiving any income. In this event, the income is to be divided among the child or children of Aramis who have not reached thirty-five years of age. To make more definite her meaning, the testatrix provides that, "all such payments from income shall cease when the last of such children has become thirty-five years of age, and for this purpose, issue of any deceased children of Aramis Rekdahl shall not be considered in determining such time."

Paragraph 8 governs the distribution of the trust estate. Summarizing, it provides that after the death of Aramis Rekdahl "and after his children have successively attained the age of thirty-five years or have died, so that there is none left to attain the age of thirty-five years, then the trust shall terminate" (except the second accumulation), "and all of the assets, whether corpus or income of the trust, shall be distributed in equal and undivided shares to the children of Aramis Rekdahl *who survive him,* provided, however, that if such children die leaving issue *who survive Aramis Rekdahl,* then such issue shall take the share which such parent would otherwise have taken." Then follow directions as to the disposition of the trust income known as the second accumulation for brothers and sisters. The balance upon termination of the "second accumulation" is to be distributed in equal and undivided shares to the children of Aramis Rekdahl *who survive him,* provided, however, that if any such children die before Aramis Rekdahl, *leaving issue who survive Aramis Rekdahl,* then such issue shall take the share which such parent would otherwise have taken if he or she *had survived.* (All emphasis that of the Court.)

At this point we will refer to paragraph 9 as the *spendthrift trust provision,* but will discuss this matter in detail later in this opinion.

The concluding paragraph 10 appoints a trustee of the trust and provides for substitute trustees, etc.

From a reading of the will it is apparent that the beneficiaries of Mabel Rekdahl's estate were: first, and of prime importance, Aramis Rekdahl, who was to receive the major part of the income during his lifetime, with power in the trustee to care for and see to it that Aramis was taken care of in illness or misfortune and in accordance with his customary standard of living. At Aramis' death, his children *who survived him* and the *issue of any child who had predeceased Aramis and who survived him* were to receive the income from the estate. These are the ones holding the equitable title to the corpus of this trust. The bequests to Mildred Manning, Harold Rekdahl, and the brothers and sisters were only of income from the trust estate, and these are not mentioned as receiving any part of the distribution of the trust fund, and therefore are not owners of any part of the corpus of the trust fund.

■ The next question to be decided is, "When does the title of the ultimate beneficiaries of this trust vest?" If at the death of Aramis Rekdahl, then there is no violation of the rule against perpetuities. If there is no vesting of title in the beneficiaries until the final distribution of the trust, then the rule against perpetuities could be violated. This would happen in the event Aramis left a surviving child, born after the death of testatrix, and who lived to be over twenty-one years plus ten months of age and outlived any of the other children of Aramis Rekdahl or the issue of deceased children of Aramis surviving him who were living at the time of testatrix' death. This is true because under this contention the trust could not be distributed until this surviving child became thirty-five years old, and it is contended title would not vest in children or issue of deceased children of Aramis until that time.

The will provides that upon the death of Aramis, his rights in the trust shall pass to his children who survive him, and in the event there be a deceased child of Aramis, then to the then surviving issue of such deceased child who would take the share their deceased parent would have taken if alive at the time of Aramis' death.

■ When the will became effective on the death of Mabel Rekdahl, Aramis survived her. He was married and had three children. Each of these children had living children. Clearly, whatever estate was in Aramis or his then living children could not possibly be in violation of the rule against perpetuities. However, Aramis could father another child or other children so long as he lived. At his death it would be possible for Aramis to have a child en ventre se mere, but if this were true, such child would be one of Aramis' children *who survived him,* and under the terms of the will he would take an interest in the trust estate as a surviving child. The same is true should Aramis father other children. The death of Aramis Rekdahl determines who are the remaindermen after Aramis' life estate and who would take the equitable title.

" * * * the rule 'rule against perpetuities renders invalid any will which attempts to create any estate or future interest which by possibility may not become vested within a life or lives in being at the time of the testator's death and twenty-one years thereafter, and when necessary the period of gestation.' " Kettler v. Atkinson (Tex.Sup., 1964), 383 S.W.2d 557, 560. See also Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600 (1951).

■ "It is immaterial that full possession and enjoyment of the property is postponed beyond the period of a life or lives in being and twenty-one years thereafter with the ordinary period of gestation added." Kelly v. Womack, 153 Tex. 371, 268 S.W.2d 903 (1954); Rust v. Rust (Tex. Civ.App., 1948), 211 S.W.2d 262, 267, opinion expressly approved by Sup.Ct., 147 Tex. 181, 214 S.W.2d 462 (1948); Anderson v. Menefee (Tex.Civ.App., 1915), 174 S.W. 904.

The law favors a construction that will permit the earliest possible vesting of an estate. Crowley v. Vaughan (Tex. Civ.App., 1961), 347 S.W.2d 12, writ refused; Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888 (1948).

"In this connection it should be noted that the law favors the vesting of estates rather than otherwise; that is, if the will when fairly construed leaves the question in doubt, the doubt will be solved in favor of the vesting of the title at the earliest possible moment, so as to avoid a conflict with the rule against perpetuities and to uphold the will." Anderson v. Menefee, 174 S.W. 904 (Tex. Civ.App., 1915), writ denied.

"It is, of course, essential to immediate vesting (possession or enjoyment being postponed) that the person to take be presently in existence and of certain identity. See 2 A.L.I.Rest.Property, § 157, com. q. And it is also well established that the fact the legal title is vested in trustees, with full discretion as to the application of the income or corpus to the uses of the beneficiary during the trust period, does not militate against the immediate vesting of the beneficial (equitable) title in the beneficiary, * * *." Rust v. Rust, 211 S.W.2d 262.

The case of Rust v. Rust (Tex.Civ.App., 1948), 211 S.W.2d 262, approved 147 Tex. 181, 214 S.W.2d 462 (1948), is helpful in our deciding when the equitable title herein vests in the beneficiaries. The question for discussion in Rust was whether the provisions of John Y. Rust, Jr.'s will disposing of the residuary estate violated the rule against perpetuities. A similar claim is made by petitioners herein. Testator Rust left a will whereby he gave, devised and bequeathed in trust to his executors and trustees all of his residuary estate to hold, manage, use and control for "the use and benefit" of his daughter, Margene A. Rust. The trust estate was to be held together until October 17, 1967, when it should terminate and the fee simple title should

vest in the daughter. If the daughter died without leaving surviving issue of her body prior to the termination date of the trust, then all of the property left in trust was given to testator's then living brothers and sisters, with the child or children of any predeceased brother or sister taking the share of the parent per stirpes. Should the daughter die prior to the termination date, leaving issue of her body, then such issue were to become the beneficiaries of the trust and receive the title to the trust property in fee simple upon termination date of the trust. The trustees were given the power to possess, handle, manage, and control the trust property with full power and authority to mortgage, sell, and convey same or any part thereof, to invest and reinvest the proceeds, etc., which may be incident to the complete management and control thereof. The trustees were also given the power to use any portion of the income or corpus for the daughter's support, maintenance, and education or for any of the daughter's child or children who might become the beneficiaries of the trust.

In stating the question to be decided by the court, the court said:

"Since on May 6, 1942 (the date of testator's death) it was within the range of possibilities that Margene A. Rust (born October 17, 1932) might die before October 17, 1946 (21 years prior to the termination of the trust period) and leave a surviving child, the controlling issue is whether, on the one hand, her interest in the property constituted a vested (base) fee subject to defeasance in case of her death prior to October 17, 1967, or, on the other hand, no title would vest in her unless and until she was living on that date. Stated differently, the issue is whether (a) her living until October 17, 1946, constitutes a condition precedent to the vesting of any title in her (appellants' contention), or (b) her death prior to that date constitutes a condition subsequent divesting the title vested in her as of the date of her father's death."

The court held the fee simple title vested in the daughter on the death of the testator—her father—defeasible upon the condition subsequent of her death prior to October 17, 1967, and subject to the trust provisions. Upon the death of the daughter prior to October 17, 1967, without issue, the fee simple title vests in the brothers and sisters. In the event the daughter died prior to October 17, 1967, leaving issue, title vested in such issue "then surviving." The court held that "then surviving" meant issue surviving at the time of the daughter's death and not at the termination of the trust. Considering the will as a whole, the court found that it did not violate the rule against perpetuities and affirmed the trial court's judgment so holding. This Court wrote a very short opinion, stating among other things that, "we approve the opinion of the Court of Civil Appeals and find it unnecessary to write further." The judgment of the Court of Civil Appeals affirming the trial court's judgment was affirmed.

The powers given to the trustees in Rust were much stronger than in our case. In our case the contention is urged that there is no vesting of title until the end of the trust estate, as was argued in Rust. In our case it is also urged that the taker of the title, when the trust is ended and its assets distributed, will not be ascertainable until distribution, therefore, there is a possibility this event will occur more than twenty-one years, plus the period of gestation, after the death of those in being at the testatrix' death.

■ The language of Mabel Rekdahl's will is clear as to whom the takers of the remainder estate will be. They are the children of Aramis who survive him at the time of his death, plus any surviving issue of a deceased child of Aramis. Petitioners rely on a portion of paragraph 8 of the will as support for their contention that no title vests until distribution. That language is found in the part of the will providing for the end of the trust except the second accumulation. The language is, " * * * such trust shall be distributed in equal and undivided shares to the *children of Aramis Rekdahl, who survive him,* provided however that *if any such children* dies *leaving issue who survive Aramis Rekdahl, then such issue* shall take the share which such parent would otherwise have taken." It is claimed that "if any *such children* dies leaving issue, etc." refers to the death of grandchildren of Aramis who die leaving issue, and therefore the "issue heirs" cannot possibly be known until the time of distribution. An examination of the rest of paragraph 8 which sets out how the residue of the second accumulation is to be distributed, and who are the "takers" of such balance makes clear testatrix' meaning. The language used is, " * * * any residue therein shall be distributed in equal and undivided shares *to the children* of Aramis Rekdahl, *who survive* Aramis Rekdahl, provided however, that *if any such children* dies before Aramis Rekdahl, leaving *issue who survive* Aramis Rekdahl, then such issue shall take the share which such parent would otherwise have taken if he or she survived." There can be no question but that "such children" as used in this last part of paragraph 8 refers only to a child of Aramis, and not to issue of such deceased child, i. e., grandchildren and great-grandchildren. The words "child," "children," or "issue" are not mentioned in the first six paragraphs of Mabel Rekdahl's will. It is only in paragraphs 7 and 8 of the will that we find the words "child," "children," or "issue." In paragraph 7 "child" or "children" of Aramis is always used to designate the immediate offspring or issue of Aramis' body. The word "issue" is used to designate the "offspring or issue" of a "child or children" of Aramis. To make clear this distinction the last sentence in paragraph 7 provides, "Such payments shall continue until *such child* receiving hereunder is thirty-five years of age, at which time each of *such children* successively becoming thirty-five years of age, shall cease to receive any money therefrom and the full balance of such payment shall be made to

*such child* or *such children* of Aramis Rekdahl who has not or have not attained the age of thirty-five years, provided further however all such payments from income shall cease when the last of *such children* has become thirty-five years of age, and for this purpose, *issue* of any *deceased children* of Aramis Rekdahl shall not be considered in determining such time."

We hold that by the words "if any *such children* dies leaving issue who survive Aramis Rekdahl" mean that "such children" refers to the children of Aramis Rekdahl who die before his death and not to his grandchildren or great-grandchildren. The "such issue" referred to means the issue of a deceased child of Aramis Rekdahl. These issue are substitutional takers, i. e., their interest vested at the death of their parent, and therefore the gift of the parent's portion to them is valid. Leach and Tudor, The Rule Against Perpetuities, p. 61 note 6 (1957).

As was said in Munger v. Munger (Tex.Civ.App.1927) 298 S.W. 470, 474, writ refused: "The provisions of the will now under consideration are not of doubtful meaning, but, if they should be so considered, it would be our plain duty to give them such interpretation, guided by applicable rules of course, as would uphold, rather than destroy the trust. Neely v. Borgden (Tex.Com.App.1922), 239 S.W. 192 (193)."

Our holding is that the beneficial title to the trust estate vested in Aramis Rekdahl for his life, with remainder in his surviving children and the surviving issue of any child of Aramis who has predeceased him. In the event any of Aramis' children were deceased at the time of his death, the surviving issue of such deceased child took the portion to which such deceased child would have been entitled if alive at that time. Possession and enjoyment of the takers of the trust properties is postponed until distribution.

Paragraphs 4 and 5 of Mabel Rekdahl's will (first and second accumulations) plainly demonstrate that testatrix did not intend the trust to last longer than twenty-one years after her death, should Aramis Rekdahl predecease her. That language is " * * * then such accumulations shall be made until twenty-one years after my death, or until the entire trust hereunder terminates, whichever is sooner."

Petitioners claim there are no words of gift to any of the beneficiaries of the trust estate or an interest therein.

The preamble of Article III of testatrix' will says, "I give, bequeath, and devise to my trustee * * * in trust for the benefit of persons and as follows, to-wit, * * *." These are words of gift. The testatrix states by this paragraph that she gives the property. The remainder of the article is a description of the manner in which she gives it. Thus, petitioners' argument that there are no words which show an intent to vest any interest in anyone prior to the termination of a trust is not sound. Furthermore, this argument of petitioners that the only provision for ultimate vesting of interests in the trust property is contained in the direction to divide and distribute at the termination of the trust, is based on the rule of construction known as the "divide and pay over rule." The rule has little vitality in modern law, Schwartz, Future Interests and Estate Planning 259 (1965), and has been disapproved by the courts of Texas, Crowley v. Vaughan, 347 S.W.2d 12 (Tex.Civ.App., 1961), refused.

If the phrase "who survive him" is the only condition precedent attached to the gift to the children of Aramis, the condition will be met at Aramis' death, and the interest must vest, if at all, at that point. Under this construction if a child of Aramis does predecease Aramis, that child's interest ends and his issue who survive Aramis take the place of their parent. Thus the interests of the substitutional

takers must also vest, if at all, at Aramis' death. Under this construction all remaindermen are ascertained and their interests vest, if at all, upon the death of a life in being (Aramis' life)—well within the period allowed by the rule.

Petitioners' final argument is that the language of paragraph 9 demonstrates an intent that no interest vest until the distribution of the trust. This paragraph is a spendthrift provision, and its purpose is to prevent anticipation in enjoyment, assignment, or attachment of the trust assets by the beneficiaries. The language relied on by petitioners is "neither the assets or [of] such trust or any part of the trust referred to above, nor the income therefrom shall vest in any of such beneficiaries, until the termination of said trust * * *." This language is easily construed as meaning "vest in possession." Such a construction is entirely in keeping with the purpose of a spendthrift clause. However, the construction of "vest in interest" is inconsistent with the prior language of the will which orders income paid out and allows invasion of the corpus at the discretion of the trustee (paragraph 1). Petitioners' construction is also inconsistent with the gifts which have no condition precedent other than surviving Aramis, e. g., the residue of the second accumulation. Assume, however, that the language is open to either a "vest in possession" or "vest in interest" construction. When an instrument is equally open to two constructions, the one which renders the instrument valid will be accepted. Kelly v. Womack, supra. We hold that the language of paragraph 9 is a spendthrift trust provision and "vest" refers to "vesting in possession."

Petitioners cite as controlling the case of Henderson v. Moore, 144 Tex. 398, 190 S.W.2d 800, 802. This Court in Kelly v. Womack, supra, discussed the case of Henderson v. Moore and distinguished it. The language pointed out by the Court in Henderson v. Moore as demonstrating that the testator clearly expressed an intention

that there be no vesting of any title until twenty-five years after his death is not found in Mabel Rekdahl's will. It was said in Kelly v. Womack: "We are of the opinion that the beneficial or equitable title vested in the named living beneficiaries at the time of the execution of the deed regardless of the attempted restraint on alienation." 268 S.W.2d 905.

We hold that the beneficial or equitable title to this trust vested in Aramis Rekdahl for his lifetime, with a contingent remainder vesting in his children *who survive him* and in the surviving issue of any child of Aramis who has predeceased him to take per stirpes.

The judgments of both courts construing Mabel Rekdahl's will are affirmed.

## DISSENTING OPINION

STEAKLEY, Justice.

I am unable to agree with the holding that the title of the ultimate beneficiaries vests at the death of Aramis Rekdahl. Such title does not vest until the termination of the trust, and thus, as pointed out on page five of the majority opinion, the conveyance is violative of the Rule Against Perpetuities.

In determining whether a particular conveyance violates the Rule Against Perpetuities, the crucial consideration is the language employed. See Kettler v. Atkinson, 383 S.W.2d 557, 561 (Tex.Sup.1964); Restatement, Property § 242 (1940); cf. W. B. Leach & J. Logan, Future Interests and Estate Planning 245 (1961). The will in question provides in part:

"8. After the death of·Aramis Rekdahl and after his children have successively attained the age of thirty five years or have died so that there is none left to attain the age of thirty-five years then all of this trust shall terminate. * * *

"9. Neither the assets of such trust nor any part of the trusts referred to above,

nor the income therefrom shall *vest* in any of such beneficiaries until the termination of said trust. * * *" (Emphasis added.)

The word "vest" may denote either a vesting in interest or a vesting in possession. See, e. g., Randall v. Bank of America, 48 Cal.App.2d 249, 119 P.2d 754 (1941); Burney v. Arnold, 134 Ga. 141, 67 S.E. 712 (1910). However, the ordinary meaning of the word "vest" is "vest in interest", and courts are reluctant to construe the word "vest" as meaning "vest in possession." See In Re Haney's Estate, 174 Cal.App.2d 1, 344 P.2d 16 (1959); 3 T. Jarman, Wills 2042 (8th ed 1951).

By virtue of the first clause of paragraph eight, set out above, the proceeds of the trust *vest in possession* at the termination of the trust. Therefore to ascribe the meaning "vest in possession" to the word "vest" in paragraph nine renders the first clause of paragraph nine mere surplusage. A will should be construed so as to give effect to every clause. See Irons v. Fort Worth Sand & Gravel Co., 260 S.W.2d 629, 631 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n. r. e.). Thus the word "vest" in paragraph nine means vest in interest, and the interest of the ultimate beneficiaries does not vest until the termination of the trust.

At common law, where an interest may vest too remotely, the entire interest has been stricken down. See W. B. Leach & O. Tudor, The Rule Against Perpetuities § 24.47 (1957). Ignoring a testator's obvious intent and striking down a bequest because the scrivener of his will was unlearned in all of the intricacies of the Rule Against Perpetuities seems basically wrong. Recognizing this, a number of legal writers have advocated the application of the principle of

cy pres (also known as equitable approximation) to perpetuities problems. See 6 American Law of Property § 24.11 at 42 (Casner ed. 1952); L. Simes & A. Smith, Future Interests § 1257 (2d ed. 1956); L. Simes, Public Policy and the Dead Hand 74–80 (1955); Browder, Construction, Reformation, and the Rule Against Perpetuities, 62 Mich.L.Rev. 1 (1963); Leach, Perpetuities Legislation: Hail Pennsylvania, 108 U.Pa.L.Rev. 1124, 1149 (1960); Quarles, The Cy Pres Doctrine: Its Application to Cases Involving the Rule Against Perpetuities and Trust for Accumulation, 21 N.Y.U.L.Q. 384 (1946); contra J. C. Gray, Rule Against Perpetuities §§ 857–893 (4th ed. 1942.) [1]

The doctrine of cy pres goes on the principle that "where there is a general and a particular intent, and the particular one cannot take effect, the words shall be construed to give effect to the general intent." Robinson v. Hardcastle, (1788) 2 Durn. & E. 241, 254. The most common application of the cy pres doctrine is in the law of charitable trusts. If it is impossible, impractical, or illegal to carry out the terms of a charitable trust, and the settlor has indicated a general charitable purpose, the courts will authorize the substitution of another charitable scheme within the general purpose. See generally Coffee v. William Marsh Rice University, 408 S.W.2d 269, 285–286 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.); Restatement (Second) of Trusts § 399 (1959); 4 A. Scott, Trusts § 399 (1959). There is no logical reason why a similar process should not be applied to a perpetuities problem where the age contingency is in excess of twenty-one years. Where the dominant intent expressed throughout the will relates to who should be the beneficiaries and not when the distribution should take place, an age

1. "Judges who have made up their minds to develop a better law of perpetuities should not allow themselves to be bullied by Gray's massive volume. * * *"

"Gray's patient scholarship was devoted to establishing a monolithic Rule, beautiful in its logical self-consistency. * * *

Certainty, simplicity and clarity are desirable in any rule of law, but they are not the only virtues or even sufficient virtues." See Leach, Perpetuities in Perspective: Ending the Rule's Reign of Terror, 65 Harv.L.Rev. 721, 747 (1952).

contingency in excess of twenty-one years should be reduced to twenty-one.

Reduction of an age contingency to avoid the destructive effects of the Rule Against Perpetuities is not a recent innovation. In 1832, the English Commissioners on the Law of Real Property recommended that where a gift violated the Rule by reason of an age contingency in excess of twenty-one years, the contingency should be reduced to twenty-one. Parliament adopted this recommendation in 1925.[2] Since then, Connecticut,[3] Maine,[4] Maryland,[5] Massachusetts,[6] and New York[7] have enacted similar perpetuities legislation.

Cy pres developments have not been limited to the legislature. On the judicial front, the Supreme Court of New Hampshire reduced an age contingency without the aid of a statute in Edgerly v. Barker, 66 N.H. 434, 31 A. 900, 28 L.R.A. 328 (1891). There the testator provided that the estate would vest when the youngest of his grandchildren attained the age of forty. By cy pres, the New Hampshire Supreme Court reduced the age contingency to twenty-one years. In Carter v. Berry, 243 Miss. 321, 140 So.2d 843, 95 A.L.R.2d 791 (1962), the Mississippi Supreme Court took a similar position. There the testator directed that the trust continue until his youngest grandchild reached twenty-five. The court relied heavily upon *Edgerly* and adopted its cy pres solution of reducing the age contingency to twenty-one years.

The Rule Against Perpetuities "should be a check on vain, capricious action by wealthy empire builders. But it should not be a constantly present threat to reasonable dispositions which slightly overstep a technical line." W. B. Leach & O. Tudor, The Rule Against Perpetuities § 24.11 at 43 (1957). Reduction of an age contingency to twenty-one years where this helps effectuate the primary intent of the testator is a step toward relegating the Rule Against Perpetuities to its proper function. So, here as in Edgerly v. Barker, supra, and Carter v. Berry, supra, the court should look to the testatrix' dominant intent. A reading of the entire will makes clear that Mabel Rekdahl's dominant intent was that the children of Aramis Rekdahl, rather than Aramis Rekdahl himself, receive the proceeds of the trust. That they should not have it until the youngest reached the age of thirty-five was secondary. Utilizing cy pres, the thirty-five year age contingency should be reduced to twenty-one, and the proceeds of the trust should be distributed when the youngest of Aramis Rekdahl's children, whenever born, reaches the age of twenty-one.[8]

This reduction of the age contingency eliminates any possibility of the interest here in question not vesting within a life in being and twenty-one years. For purposes of the Rule Against Perpetuities, Aramis Rekdahl is a life in being. See generally W. Schwartz, Future Interests and Estate Planning § 6.3 (1965). With this

2. Law of Property Act, 9th April, 1925, XV Geo. 5, ch. 20, § 163.

3. Conn.Gen.Stat.Ann. § 45–96 (1960). See 54 Mich.L.Rev. 723 (1956).

4. Me.Rev.Stat.Ann. ch. 160, § 28 (Supp. 1961). See 54 Mich.L.Rev. 723 (1956).

5. Md.Ann.Code, art. 16, § 197A (1957).

6. Mass.Ann.Laws ch. 184A § 2 (1958). See Leach, Perpetuities, Legislation, Massachusetts Style, 67 Harv.L.Rev. 1349 (1954).

7. N.Y. Real Prop.Law, McKinney's Consol. Laws, c. 50, § 42-b; N.Y. Personal Property Law, McKinney's Consol.Laws, c. 41, § 11-a.

8. There is considerable difference of opinion as to whether the cy pres doctrine should be limited to reforming age contingencies. Compare Leach, Perpetuities: Cy Pres on the March, 17 Vand.L. Rev. 1381, 1385 (1964), and Schuyler, Should the Rule Against Perpetuities Discard Its Vest? 56 Mich.L.Rev. 683, 726 (1958). Since the case at bar involves an age contingency, it is unnecessary to enter into this controversy.

**398**

reduction in the age contingency, the interest would have to vest, at the very latest, twenty-one years after the death of Aramis Rekdahl.

CALVERT, C. J., and GREENHILL, J., join in this dissent.

## DISSENTING OPINION

NORVELL, Justice.

I am in essential agreement with what Mr. Justice Steakley says in the forepart of his dissenting opinion. Under the plain wording of the document before us, title to the property which is the subject matter of the testamentary trust created by Mabel Rekdahl did not vest until the termination of such trust and hence the provisions contained in Mrs. Rekdahl's will creating such trust are violative of the rule against perpetuities.

The public policy sought to be served by the rule is an important one and is strongly stated in our Constitution: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, * * *." (Article 1, § 26, Texas Constitution.) However, the expedient of knocking off a few years so as to amend the will to save the trust is but little more acceptable to me than the adoption of the "postponement of possession" device fashioned by the majority to circumvent the rule. In today's fast moving world, we should not encourage the vain attempts of those who attempt to place a "dead hand" upon the movement and transfer of property when no public or charitable purpose is accomplished thereby. And, I submit, we should not amend, construe and change written instruments because scriveners are unlearned in the intricacies of the rule against perpetuities, the requirements of the statute of wills, the niceties of the law of conveyances or the refinements of the statutes of fraud. To the contrary, we should give the words contained in the document their clear meaning and purport, and then

apply the applicable public policy rule thereto. The adoption of any other rule will produce uncertainty and result in confusion. I would render judgment for petitioners.